Eldon O. **HALDANE**, Appellant,

v.

**Wilhelmina Helen King CHAGNON**, Horace N. Freedman, Lloyd S. Nix, Allen Miller, Wilfred H. Tomlin, Appellees.

No. 19370.

United States Court of Appeals
Ninth Circuit.

May 5, 1965.

Rehearing Denied June 3, 1965.

Eldon O. Haldane, Los Angeles, Cal., in pro. per.

Joseph W. Jarrett, Los Angeles, Cal., for appellee, Chagnon.

Donald E. Ruppe, Crider, Tilson & Ruppe, Los Angeles, Cal., for appellee, Freedman.

Before MERRILL, DUNIWAY and ELY, Circuit Judges.

ELY, Circuit Judge:

This appeal is from an Order of Dismissal. Appellant, plaintiff below, sought damages in excess of ten million dollars from two licensed California attorneys, two judges of the Superior Court of California, and the bailiff of one of the judges. He attempted to ground his action upon the Civil Rights Act, 42 U.S.C. §§ 1981–1988, and in one paragraph of his complaint alleged, in effect, and in general terms, that the five defendants illegally and maliciously conspired to deprive him of various constitutional rights. From other portions of the complaint and from several documents. attached thereto as an exhibit and wholly "incorporated by reference," we gain more detailed information as to circumstances giving rise to the action.

It appears that appellant was a party to a divorce action in the state court, representing himself in propria persona. During the trial of this suit before one of the defendant judges, Nix, the conduct of appellant caused the judge to confer with the two defendant-appellee attorneys and, shortly thereafter, to direct his defendant bailiff to complete and file a printed form of petition which, under California law,[1] prayed, with respect to plaintiff-appellant, "that examination be made to determine the state of mental health of said person alleged to be mentally ill, and that such measures be taken for the best interest and protection of said person, in respect to supervision, care or treatment, as may be necessary and provided by law." The petition was presented to the second defendant judge, one Miller, who was regularly assigned for the judicial supervision of such matters. Judge Miller promptly signed a so-called "Order For Detention" which called for appellant's detention and examination and which resulted, forthwith, in appellant's being taken into custody and hospitalized. The order also designated two physicians to observe appellant and make report as to whether or not his condition did, in their opinion, require continued detention and treatment.

The appointed physicians reported that the appellant was in no such need, so that approximately two days after he was taken into custody, he was released.[2]

Following service upon the defendant attorneys, they moved to dismiss the purported cause of action as against them, and following a hearing, the trial court entered an Order of Dismissal as to all five defendants. There was no appearance by the defendant judges and defendant bailiff, and the record before us does not reveal whether or not they have ever been served.

Had the Order of Dismissal run in favor of the two appearing defendants only, leaving the matter pending as to other defendants, the present appeal would have been premature. Richardson v. United States, 336 F.2d 265 (9th Cir. 1964), Miles v. City of Chandler, 297 F.2d 690 (9th Cir. 1961). Since the al-

---

1. California Welfare and Institutions Code, Secs. 5047, 5048, 5049.

2. While both physicians expressed their medical opinions that the condition of appellant's mental health was not such as to require treatment under continued hospital confinement, both of them noted observations as to appellant's abnormality. One of the reports read, in part,

"Has severe hypertension. * * * Judgment is quite defective. Insight poor." The report of the other physician mentions a "stroke" suffered by appellant in 1959 and continues "This man presents symptoms physically & mentally which are in conformity to a C.V.A. Undoubtedly there has been some irritability & loss of judgment, * * *."

leged cause of action was dismissed in favor of all defendants, thus having the effect of terminating the litigation in the court below, the Order of Dismissal is appealable.

■ We believe, also, that the Order of Dismissal was properly made. In reaching this conclusion, we have not overlooked the rule that a complaint is not subject to dismissal on the ground that there is a failure to state a claim upon which relief can be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 1957, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed. 2d 80, York v. Story, 324 F.2d 450, 453 (9th Cir. 1963), Marshall v. Sawyer, 301 F.2d 639, 647 (9th Cir. 1962), Cohen v. Norris, 300 F.2d 24, 31 (9th Cir. 1962). We are also mindful of the fact that our court has said, "The only elements which need to be present in order to establish a claim for damages under the Civil Rights Act are that the conduct complained of was engaged in under color of state law, and that such conduct subjected the plaintiff to the deprivation of rights, privileges, or immunities secured by the Constitution of the United States." Marshall v. Sawyer, supra, 301 F.2d at 646.

Such a general expression may properly follow the broad sweep of language which constitutes the Civil Rights Act; however, it cannot be literally applied to the exclusion of restrictive rules and precedents of equal force. Certain restrictive rules, serving to modify the broad general rule as to required allegations of the elements necessary to state a claim under the Civil Rights Act, have been announced by this court. See Hoffman v. Halden, 268 F.2d 280 (9th Cir. 1959), Agnew v. City of Compton, 239 F.2d 226 (9th Cir. 1956), Cohen v. Norris, supra.

■ Applying the principles of the last cited cases to the appellant's complaint, we see that the dismissal would have been improper had it been based solely upon the allegations of the complaint itself, considered separate and apart from the facts which were disclosed by the attached exhibit and, by the appellant himself, "incorporated by reference" into his allegations. In our view, these specifically alleged and documented facts bring the plaintiff-appellant to an insurmountable barrier, namely, the time honored rule of judicial immunity, a rule which is indispensable to the free and fearless administration of justice. Judges are immune from civil liability for acts done in the course of their official functions, and we have held that the doctrine, so firmly and deeply planted in the field of Anglo-American law, is operative in actions grounded upon the Civil Rights Act. Sires v. Cole, 320 F.2d 877 (9th Cir. 1963), Harmon v. Superior Court of State of California, 329 F.2d 154 (9th Cir. 1964), Agnew v. Moody, 330 F.2d 868 (9th Cir. 1964), Harvey v. Sadler, 331 F.2d 387 (9th Cir. 1964). Our view is firmly supported by persuasive, if not controlling, precedent, it having been held that the Civil Rights Act did not abolish a *legislator's* immunity from civil liability for acts done by him in the field where legislators traditionally have power to act. Tenney v. Brandhove, 1951, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019. The principle is demanded by every reasonable consideration of public policy and has long endured. In Yates v. Lansing, 1810, 5 Johns, N.Y. 282, Chief Justice Kent, tracing the doctrine and finding that its origin could be seen at least as early as the time of Edward III, had this to say, "It is to be found in the earliest judicial records, and it has been steadily maintained by an undisturbed current of decisions in the *English* courts, amidst every change of policy, and through every revolution of their government. A short view of the cases will teach us to admire the wisdom of our forefathers, and to revere a principle on which rests the independence of the administration of justice." The Congress has not said that in civil rights cases there may be intrusion upon the rule, and again quoting the learned Chief Justice Kent, "Ought such a sacred prin-

ciple of the common law, as the one we have been considering, to be subverted, without an express declaration to that effect?"

The Supreme Court of the United States has never retreated from early recognition of the compelling need of the doctrine. It held, in Bradley v. Fisher, 1871, 13 Wall. 335, 20 L.Ed. 646, that the principle of judicial immunity could not be undermined even by allegations that a judge's actions were motivated by corruption, malice, or other improper considerations. It said "If upon such allegations a judge could be compelled to answer in a civil action for his judicial acts, * * * his office [would] be degraded and his usefulness destroyed, * * * "

■ As the authorities suggest, a judge, acting in his capacity as a private citizen and divorcing himself from his judicial duties, may cast aside his cloak of immunity. The only remaining problem, therefore, with respect to the defendant judges in the case at bar, is related to consideration of whether or not doing the acts for which they are sought to be held responsible in damages, they were acting within the course and scope of their judicial duties. As to the defendant Miller, there is no doubt that he performed, with exactness and promptness and with the utmost protection to plaintiff-appellant, the sole judicial duty with which he was charged as judge of the particular court assigned the responsibility of administering the California law which granted authority for detention and observation under court supervision. We believe, also, that the defendant Nix acted within reasonable limits of the scope of his judicial responsibility. It is true that at the time he initiated the steps which brought about the detention, he was conducting litigation which involved divorce and not lunacy. Nevertheless, it is clear that his actions stemmed directly from the performance of his judicial duties. Subjected to conduct on the part of plaintiff-appellant which, if pursued, might possibly have led to the loss of courtroom decorum and the creation of intolerable disorder, what courses were available? Should the court have adjourned the proceedings or terminated them midway with consequent impairment and obstruction of the course of justice? Should the judge have punished the plaintiff-appellant summarily for direct contempt and ordered that he be jailed? Had he taken such drastic action with proper procedure, the plaintiff-appellant would have been forced to suffer the indignity of a contemnor without possibility of redress in money damages from the judge. Should the judge be made to suffer because he resorted to the more humane and compassionate choice which he took, that of bringing a possibly sick litigant to the immediate attention of competent physicians? We think not.

The defendant bailiff acted at the direction of the judge to whom he was immediately and directly responsible. In so doing, he was a part of the body of the court itself. In Hoffman v. Halden, supra, we held that a jailer or keeper was not liable under the Civil Rights Act for "performing a duty which the law at that time required him to perform." A court's bailiff is required by law to preserve order in the courtroom, to protect the court, and to comply with directions given him by the judge during the course of judicial proceedings. It is alleged that the defendant bailiff here, in signing the petition which alleged the bailiff's belief that appellant was in need of medical care, did so at the express direction of the judge whose arm and agent he then was. In the light of our decision that there can be no valid claim against the judge, the bailiff is entitled to the protection of the judicial immunity which surrounded the whole court.

■ With the elimination of the defendant judges and bailiff from the case, claims against the defendant attorneys under the Civil Rights Act cannot be stated. The attorneys were not State officers, and they did not act in conspiracy with a State officer against whom appellant could state a valid claim. It follows that they did not, and could not, commit

 

the alleged wrongful acts "under color of state law or authority"; hence, they are not subject to liability under the Civil Rights Act. Bottone v. Lindsley, 170 F.2d 705 (10th Cir. 1948), Skolnick v. Martin, 317 F.2d 855 (7th Cir. 1963), Skolnick v. Spolar, 317 F.2d 857 (7th Cir. 1963), Swift v. Fourth National Bank of Columbus, Georgia, 205 F.Supp. 563 (D.C.M.D.Ga.1962). See also, Hoffman v. Halden, supra.

Affirmed.