Carrol Anita LOWERY, Plaintiff,

v.

A. Andrew HAUK, Defendant.

No. CV 76–1893–ALS(G).

United States District Court,
C. D. California.

Nov. 11, 1976.

Carrol Anita Lowery, pro se.

A. Andrew Hauk, pro se.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

BOHANON, District Judge, Sitting by Designation.

Plaintiff has brought suit under 42 U.S.C. §§ 1983, 1985, and 1986 (the Civil Rights Act) against a United States District Judge for the Central District of California, seeking declaratory relief, along with general, exemplary and punitive damages from the defendant as just and proper redress for the actions of the defendant which resulted in the plaintiff's suffering from the loss of rights, privileges and immunities secured by the Constitution of the United States, and plaintiff is seeking aggregate damages in excess of one million dollars. The suit complains that on April 21, 1975, while on recess, defendant Judge A. Andrew Hauk issued an Order to several people in his chambers, at least three of which were United States Deputy Marshals, to go into the corridor outside his courtroom and tell the citizens there who were wearing badges and who were there in connection with a judicial proceeding then pending in his court, to remove their badges or that they would be escorted from the courthouse. The plaintiff was confronted by five men, two in uniform and three in civilian clothing, who told her to remove the badge from her lapel. Plaintiff contends that in failing to remove the badge, she was wrongfully removed from the courthouse.

In defendant's Affidavit regarding the Security Order of April 21, 1975, he states in essence that on April 21, 1975, while the Court was conducting a post-trial hearing in the case of *United States v. John Noehl Schmitz,* wherein defendant had been found guilty by a jury, the Court saw a group of people parading and demonstrating in the hall outside the courtroom and recognized that they appeared to be some of the people who had been present in the courtroom at the trial of Schmitz. Upon being advised that some of the people demonstrating were wearing badges resembling law enforcement badges, the Court determined that the people demonstrating and wearing the badges were members of the "Posse Comitatus" the militant arm of the "Tax Rebellion Committee." (Schmitz had admitted at his trial that he was a member of this organization.) The defendant further stated that knowing of the militant activities and threats of this group, he was convinced that the parading and demonstrating in the hallway outside his courtroom constituted an immediate, present and obvious danger to the security of the Court and its environs. Therefore, he made the Order that persons wearing badges should remove them or be escorted out of the courthouse.

The Court finds and concludes that this suit must be dismissed for two reasons:

First, the Complaint violates Rule 8 of the Federal Rules of Civil Procedure which requires: "(a) a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." A Complaint in violation of Rule 8 may be dismissed without leave to amend when it is

"so verbose, confused and redundant that its true substance, if any, is well disguised." *Corcoran v. Yorty,* 347 F.2d 222 (9th Cir. 1965). Plaintiff's fourteen-page Complaint clearly meets this requirement.

More fundamentally, it is a suit which, on its face, cannot be maintained against the sole defendant.

■ Judges are cloaked with absolute immunity for acts committed within their judicial jurisdiction. *Bradley v. Fisher,* 13 Wall. 335, 80 U.S. 335, 20 L.Ed. 646 (1871); *cf. Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). This immunity applies even when the judge is accused of acting maliciously and corruptly. *Pierson v. Ray,* 386 U.S. 547, 553–554, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); *Bradley v. Fisher, supra* ; *Sires v. Cole,* 320 F.2d 877, 879 (9th Cir. 1963).

The policy considerations in this ancient common law rule were fully expounded by the Supreme Court in *Bradley v. Fisher, supra.*

" . . . For it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself. Liability to answer to every one who might feel himself aggrieved by the action of the judge, would be inconsistent with the possession of this freedom, and would destroy that independence without which no judiciary can be either respectable or useful. As observed by a distinguished English judge, it would establish the weakness of judicial authority in a degrading responsibility.

The principle, therefore, which exempts judges of courts of superior or general authority from liability in a civil action for acts done by them in the exercise of their judicial functions, obtains in all countries where there is any well-ordered system of jurisprudence. It has been the settled doctrine of the English courts for many centuries, and has never been denied, that we are aware of, in the courts of this country. It has, as Chancellor Kent observes, 'a deep root in the common law.'

Nor can this exemption of the judges from civil liability be affected by the motives with which their judicial acts are performed. The purity of their motives cannot in this way be the subject of judicial inquiry. This was adjudged in the case of *Loyd and Barker,* reported by Coke, in 1608, where it was laid down that the judges of the realm could not be drawn in question for any supposed corruption impeaching the verity of their records, except before the king himself, and it was was observed that if they were required to answer otherwise, it would 'tend to the scandal and subversion of all justice, and those who are the most sincere, would not be free from continual calumniations.'

The truth of this latter observation is manifest to all persons having much experience with judicial proceedings in the superior courts. Controversies involving not merely great pecuniary interest, but the liberty and character of the parties, and consequently exciting the deepest feelings are being constantly determined in those courts, in which there is great conflict in the evidence and great doubt as to the law which should govern their decision. It is this class of cases which impose upon the judge the severest labor, and often create in his mind a painful sense of responsibility. Yet it is precisely in this class of cases that the losing party feels most keenly the decision against him and most readily accepts anything but the soundness of the decision in explanation of the action of the judge. Just in proportion to the strength of his convictions of the correctness of his own view of the case is he apt to complain of the judgment against him, and from complaints of the judgment to pass to the ascription of improper motives to the judge. When the controversy involves questions affecting large amounts of property or relates to a matter of general public concern, or touches the interests of

numerous parties, the disappointment occasioned by an adverse decision, often finds vent in imputations of this character, and from the imperfection of human nature this is hardly a subject to wonder. If civil actions could be maintained in such cases against the judge, because the losing party should see fit to allege in his complaint that the acts of the judge were done with partiality, or maliciously, or corruptly, the protection essential to judicial independence would be entirely swept away. Few persons sufficiently irritated to institute an action against a judge for his judicial acts would hesitate to ascribe any character to the acts which would be essential to the maintenance of the action.

If upon such allegations a judge could be compelled to answer in a civil action for his judicial acts, not only would his office be degraded and his usefulness destroyed, but he would be subjected for his protection to the necessity of preserving a complete record of all the evidence produced before him in every litigated case, and of the authorities cited and arguments presented, in order that he might be able to show to the judge before whom he might be summoned by the losing party—and that judge perhaps one of an inferior jurisdiction—that he had decided as he did with judicial integrity; and the second judge would be subjected to a similar burden, as he in his turn might also be held amenable by the losing party."

■ The Civil Rights Act, moreover, was not intended to create an exception to this common law doctrine. *Pierson v. Ray, supra.* Thus, a suit initiated under 42 U.S.C. §§ 1983, 1985, or 1986 against a judge must be dismissed. *Haldane v. Chagnon,* 345 F.2d 601, 604 (9th Cir. 1965); *Agnew v. Moody,* 330 F.2d 868 (9th Cir. 1964), *cert. denied,* 379 U.S. 867, 85 S.Ct. 137, 13 L.Ed.2d 70 (1964).

■ Plaintiff's further allegations of a conspiracy on the part of defendant and other parties not named as defendant do not alter this result.

"Allegations that the acts . . . were part of a conspiracy would not be sufficient to state a claim upon which relief could be granted if the claim is otherwise barred by the doctrine of judicial immunity."

*O'Bryan v. Chandler,* 352 F.2d 987, 990–91 (10th Cir. 1965), citing *Agnew v. Moody, supra.*

■ If the suit be deemed one of the nature recognized in *Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) i. e., a suit based directly upon a constitutional right or privilege, it nevertheless fails because judicial immunity would apply there as well. *See Brawer v. Horowitz,* 535 F.2d 830 (3rd Cir. 1976), in which it was noted that the policy considerations underlying the grant of immunity from actions under 42 U.S.C. § 1983 apply equally to *Bivens*-type actions.

An appropriate Order and Judgment have heretofore been entered in accordance with these Findings of Fact and Conclusions of Law and likewise in accordance with the Report and Recommendation as to the Civil Rights Complaint previously filed by the United States Magistrate.