564 F.2d 849
 Ronald Warren BRILEY, Plaintiff-Appellant,
v.
STATE OF CALIFORNIA, County of San Diego, Ronald Abernathy,
Charles M. Snell, Jr., Earl B. Gilliam, Claude B. Brown, T.
Bruce Iredale, Robert J. Stahl, Gerald F. Banks, Harry W.
Depew, Doctors Hospital, et al., Defendants- Appellees.
 No. 75-2753.
 United States Court of Appeals,
Ninth Circuit.
 Oct. 19, 1977.
 
 Hugh B. Fielder, Fielder & Fielder, North Hollywood, Cal., argued for plaintiff-appellant.
 Gregg C. Sindici, Reeve J. Jacques, San Diego, Cal., argued for defendants-appellees.
 Appeal from the United States District Court for the Southern District of California.
 Before CHOY and SNEED, Circuit Judges, and CRARY,* District Judge.
 CHOY, Circuit Judge:
 
 
 1
 Ronald Warren Briley appeals from the dismissal of his action for damages brought under 42 U.S.C. §§ 1983 and 1985(3). For the reasons stated below, we affirm in part, and vacate and remand in part.
 
 Facts and Proceedings Below
 
 2
 In 1960, Briley, a first offender, was arrested and charged in a California grand jury indictment with child molestation. He alleges that, pursuant to a "plea bargain" entered into with the district attorney's office, he was allowed to plead guilty to a lesser charge with sentence suspended, provided that he consent to a castration for which he would bear all costs. Although this "plea bargain" was never recorded and a court order was never entered approving it, Briley voluntarily submitted to the surgery on March 16, 1961. Thereafter, he was released on probation.
 
 
 3
 On or about February 11, 1974, almost thirteen years later, Briley claims he sought medical attention for manifestations of sexual dysfunction and other secondary symptoms, including loss of body hair, softening of body shape, irritability, lethargy, and hot flashes. He alleges that he was informed at that time that these disorders stemmed from the 1961 surgery and that he would have to maintain medical treatment for the remainder of his life as a result thereof.
 
 
 4
 On November 19, 1974, Briley initiated the instant action, alleging, inter alia, that the "plea bargain" deprived him of his civil rights in violation of the fourth, fifth, seventh, eighth, and fourteenth amendments of the Constitution. He also alleged professional malpractice on the part of his privately-retained counsel at the criminal proceedings and on the part of the doctors and the hospital participating in the surgical procedure. Named as defendants were the State of California, the County of San Diego, the judge at the criminal proceedings, the district attorneys involved in the "plea bargain," his privately-retained counsel, two private physicians (one who acted as a medical examiner for the county jail and who assisted in the surgery, and another who actually performed the surgery), and the hospital at which the operation took place.
 
 
 5
 On June 6, 1975, the district court dismissed the complaint as to all defendants. The § 1983 claim was dismissed on the following grounds: improper service with respect to the judge and one of the four district attorneys; immunity with respect to the remaining district attorneys; and the statute of limitations with respect to Briley's counsel, the doctors, and the hospital.[1] Briley's § 1985(3) claim was dismissed for failure to state a cause of action. After disposing of the federal claims, the district court also dismissed the pendent legal and medical malpractice claims which Briley had brought against his privately-retained counsel at trial, the doctors, and the hospital.
 
 
 6
 On appeal, Briley challenges only the dismissals of seven of the original defendants: the three district attorneys who were properly served; the physicians and the hospital; and his former counsel.[2] The applicability of 42 U.S.C. §§ 1983 and 1985(3) is therefore at issue here.
 
 Civil Rights Act Claims
 A. Section 1983
 
 7
 To state a claim under 42 U.S.C. § 1983,[3] a plaintiff must allege that (1) the defendant was acting under color of state law at the time the acts complained of were committed, and that (2) the defendant deprived plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. See Williams v. Gorton, 529 F.2d 668, 670 (9th Cir. 1976); Ouzts v. Maryland Nat'l Ins. Co., 505 F.2d 547, 550 (9th Cir. 1974), cert. denied, 421 U.S. 949, 95 S.Ct. 1681, 44 L.Ed.2d 103 (1975); Sykes v. State of California, 497 F.2d 197, 200 (9th Cir. 1974); Cohen v. Norris, 300 F.2d 24, 30 (9th Cir. 1962). See also District of Columbia v. Carter, 409 U.S. 418, 423-25, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973). Briley asserts that he was deprived of his civil rights in the following manner. First, he argues that he was fraudulently deprived of his civil rights by being castrated in return for a suspended sentence. Secondly, he contends that he was coerced into the agreement by virtue of a conspiracy among the Government defendants and the medical examiner to harass and misinform him as to the side effects of the surgery.[4] In rebuttal, the defendants argue either that they were not acting under the requisite "color of state law" or that they are immune from liability under the Civil Rights Act. Moreover, they claim that the instant action is barred by the applicable statute of limitations. We deal with the statute of limitations issue first.
 
 
 8
 1. Statute of limitations. Since § 1983 does not itself contain a limitations period, the federal courts look to the state statute of limitations applicable to the most similar state cause of action. See Smith v. Cremins,308 F.2d 187, 189 (9th Cir. 1962); Hoffman v. Halden, 268 F.2d 280, 305 (9th Cir. 1959); Cox v. Stanton, 529 F.2d 47, 50 (4th Cir. 1975). Cf. Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 462, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975) (42 U.S.C. § 1981); O'Sullivan v. Felix, 233 U.S. 318, 322, 34 S.Ct. 596, 58 L.Ed. 980 (1914) (§§ 1979-1981). This court has held that the applicable statute of limitations for actions brought in California under the Civil Rights Act is California Code of Civil Procedure § 338(1), providing a three-year limitation period "upon a liability created by statute." See Ney v. State of California, 439 F.2d 1285, 1287 (9th Cir. 1970); Smith,supra, 308 F.2d at 189-90. The appellant's complaint can be read to allege two counts of fraud or deceit. He first claims that he was assured that castration was commonly ordered by the courts and that if he failed to submit voluntarily to the procedure he would be both sentenced to the maximum term of ten years and castrated anyway. He next alleges that the defendants misinformed him about the possible deleterious side effects of the operation. He asserts that because of these fraudulent misrepresentations the statute of limitations should have been tolled until such time that he discovered, or should have reasonably discovered, the various instances of fraud.[5]
 
 
 9
 California Code of Civil Procedure § 338(1) does not contain any specific tolling provision and, hence, at first glance, Briley's claim would seem barred as untimely.[6] But, while state law controls in determining the applicable limitations period, federal law determines when the limitations period begins to run. Cox, supra, 529 F.2d at 50; Martin v. Merola, 532 F.2d 191, 195 n. 7 (2d Cir. 1976); Kaiser v. Cahn, 510 F.2d 282, 285 (2d Cir. 1974). See Rawlings v. Ray, 312 U.S. 96, 98, 61 S.Ct. 473, 85 L.Ed. 605 (1941); Hilton v. Mumaw, 522 F.2d 588, 601-02 (9th Cir. 1975); United California Bank v. Salik, 481 F.2d 1012, 1014 n. 7 (9th Cir.), cert. denied, 414 U.S. 1004, 94 S.Ct. 361, 38 L.Ed.2d 240 (1973); Moviecolor Ltd. v. Eastman Kodak Co., 288 F.2d 80, 83-84 (2d Cir.), cert. denied, 368 U.S. 821, 82 S.Ct. 39, 7 L.Ed.2d 26 (1961). "Thus a borrowed state statute of limitations may be tolled in conformity with federal doctrine where the right (sought to be vindicated) is the creature of federal statute . . . ." Kaiser, supra, 510 F.2d at 287. See Holmberg v. Armbrecht, 327 U.S. 392, 395-98, 66 S.Ct. 582, 90 L.Ed. 743 (1946); Moviecolor Ltd., supra, 288 F.2d at 82-83.
 
 
 10
 The established rule, which we apply in this case, is that, where a plaintiff has been injured by fraud or concealment and remains in ignorance of it without any fault or want of diligence on his part, the statutory period does not begin to run until discovery of the injury. Holmberg, supra, 327 U.S. at 397, 66 S.Ct. 582; Hilton, supra 522 F.2d at 602; Kaiser, supra 510 F.2d at 287; United California Bank, supra 481 F.2d at 1014 n. 7. Here, Briley alleges that he was induced into submitting to the castration in reliance upon the defendants' representations that he could be forced to submit to a castration, that such procedure was common practice, and that he would suffer no adverse effects other than permanent sterility. In light of the prevailing federal doctrine as to fraud and concealment, we feel that the broad remedial policies of the Civil Rights Act are best served by holding that the California limitations period did not commence until Briley discovered the fraud, or could have done so in the exercise of reasonable diligence.[7] This is the proper test for the district court to apply.
 
 
 11
 2. "Under color of state law" requirement. This requirement of § 1983 is the equivalent of the "state action" element of the fourteenth amendment, Green v. Dumke, 480 F.2d 624, 628 (9th Cir. 1973), and, accordingly, § 1983 is not invoked by "purely private conduct," District of Columbia v. Carter, 409 U.S. 418, 424, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973). See Phillips v. Int'l Ass'n of Bridge, S. & O. Iron Wkrs., 556 F.2d 939, 940 (9th Cir. 1977). It would appear that Briley's privately-retained counsel, the physician who did not also serve as medical examiner, and the hospital are not susceptible to suit under this section.
 
 
 12
 We have repeatedly held that a privately-retained attorney does not act under color of state law for purposes of actions brought under the Civil Rights Act. See, e. g., Szijarto v. Legeman, 466 F.2d 864 (9th Cir. 1972); Dyer v. Rosenberg, 434 F.2d 648, 649 (9th Cir. 1970); Haldane v. Chagnon, 345 F.2d 601, 604-05 (9th Cir. 1965). Similarly, in this and other circuits, private hospitals and physicians have consistently been dismissed from § 1983 actions for failing to come within the color of state law requirement of this section. See, e. g., Watkins v. Mercy Medical Center, 520 F.2d 894, 896 (9th Cir. 1975); Taylor v. St. Vincent's Hospital, 523 F.2d 75, 78 (9th Cir. 1975), cert. denied, 424 U.S. 948, 96 S.Ct. 1420, 47 L.Ed.2d 355 (1976); Ascherman v. Presbyterian Hosp. of Pacific Medical Center, Inc., 507 F.2d 1103, 1104-05 (9th Cir. 1974); Byrne v. Kysar, 347 F.2d 734, 736 (7th Cir. 1965), cert. denied, 383 U.S. 913, 86 S.Ct. 902, 15 L.Ed.2d 668 (1966); Duzynski v. Nosal, 324 F.2d 924, 929-30 (7th Cir. 1963). Briley does not assert the state involvement necessary to transform the private acts of the hospital and doctors into state action covered by § 1983. See generally Note, Judicial Review of Private Hospital Activities, 75 Mich.L.Rev. 445, 450-64 (1976).
 
 
 13
 With respect to the medical examiner for the county jail who allegedly advised Briley at the bargaining sessions, however, a different conclusion must be reached. This defendant, while serving as medical examiner and advising at the bargaining stage, was clearly clothed with the authority of state law, satisfying the "state action" requirement of § 1983. See Robinson v. Jordan, 494 F.2d 793, 795 (5th Cir. 1974). But cf. Duzynski v. Nosal,supra, 324 F.2d at 930. As to the remaining defendants the three district attorneys who participated in the "plea bargain" and who had been properly served it is obvious that they acted under color of state law and, unless found to be immune, are potentially liable under § 1983.
 
 
 14
 3. Immunity. The district court dismissed Briley's § 1983 complaint as to the district attorneys, reasoning that the acts complained of constituted an integral part of the judicial process and, hence, were immunized. Briley now asserts that there existed absolutely no legal authority granting any of the district attorneys the right to require the castration, and, in such absence, no immunity arises.[8]
 
 
 15
 In Imbler v. Pachtman, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 158 (1976), the Supreme Court held that a state prosecutor, in initiating a prosecution and in presenting the state's case, enjoys absolute judicial immunity from a civil suit for damages under § 1983. Prosecutorial immunity from civil liability is founded upon the same considerations that underlie the common-law immunities of judges and grand jurors acting within the scope of their duties, id. at 422-23, 96 S.Ct. 984; Economou v. United States Dep't of Agriculture, 535 F.2d 688, 693-95 (2d Cir. 1976), and its origin is often linked to judicial immunity, Imbler, supra, 424 U.S. at 420, 96 S.Ct. 984. As we have recently held, prosecutorial immunity extends to the process of plea bargaining as an "integral part of the judicial process." Miller v. Barilla, 549 F.2d 648, 649 n. 3 (9th Cir. 1977). Thus, the question of whether immunity attaches to the district attorneys necessarily depends on whether the judge at the original proceeding would have been afforded judicial immunity for his participation in the "plea bargaining" and sentencing arrangement.
 
 
 16
 Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 20 L.Ed. 646 (1872), is often regarded as the leading American authority on the scope of judicial immunity. The Court held that
 
 
 17
 judges of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly. A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdiction over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible.
 
 
 18
 Id. at 351-52 (emphasis added). See Gregory v. Thompson, 500 F.2d 59, 63 (9th Cir. 1974); Agnew v. Moody, 330 F.2d 868, 870 (9th Cir.), cert. denied, 379 U.S. 867, 85 S.Ct. 137, 13 L.Ed.2d 70 (1964); Sires v. Cole, 320 F.2d 877, 879 (9th Cir. 1963).
 
 
 19
 In addition to requiring a court to have general jurisdiction before immunity attaches, however, there is persuasive authority that a court, at least when ordering the extreme remedy of sterilization, must have specific legislative or common-law authority for doing so. See Sparkman v. McFarlin, 552 F.2d 172, 175-76 (7th Cir. 1977); Wade v. Bethesda Hosp., 337 F.Supp. 671, 673-74 (S.D.Ohio 1971). See also Gregory v. Thompson, supra, 500 F.2d at 62 n. 2. In finding that a state judge who ordered the permanent sterilization of a young woman was susceptible to suit under §§ 1983 and 1985(3), the Sparkman court explained:
 
 
 20
 Although courts ought not to be discouraged from creating innovative legal remedies to meet changing social conditions, they may not use the power to create new decisional law to order extreme and irreversible remedies such as sterilization in situations where the legislative branch of government has indicated that they are inappropriate. If we were to say that jurisdiction existed to order sterilization without adherence to the requirements of institutionalization and procedural due process mandated by the Indiana legislature, we would be sanctioning tyranny from the bench. There are actions of purported judicial character that a judge, even when exercising general jurisdiction, is not empowered to take.
 
 
 21
 552 F.2d at 176 (emphasis added, footnote omitted). Similarly, in Wade, the district court stated:
 
 
 22
 We begin by defining the concept of jurisdiction as it is used in the context of judicial immunity. The cases are clear that the term jurisdiction means that the judge must have both jurisdiction over the person and subject matter if he is to be immune from suit for an act performed in his judicial capacity. A third element, however, also enters into the concept of jurisdiction as used in this context. The third element is the power of the Court to render the particular decision which was given.
 
 
 23
 (T)he third element in the concept of jurisdiction as used in the context of judicial immunity necessitates an inquiry into whether the defendant's action is authorized by any set of conditions or circumstances. This inquiry begins with an examination of the statutes under which defendant . . . presumed to act.
 
 
 24
 337 F.Supp. at 673 (emphasis added, citations omitted). Not finding any statute or judicial precedent authorizing the state judge's order to sterilize a "feeble minded" person, the court went on to hold that the defendant had acted "without jurisdiction" and, consequently, was not protected by the doctrine of judicial immunity. Id. at 674. We think that the analysis of these sterilization cases applies a fortiori to this case which involves a procedure causing mutilation and hormonal changes in addition to sterility.
 
 
 25
 Judicial immunity here thus depends upon the existence of a specific statute which arguably authorizes castration in cases like Briley's. We are aware of at least two provisions in the California Penal Code which authorize asexualization or sterilization under certain limited circumstances. See Cal.Penal Code § 2670 (pertaining to inmate recidivists) & id. § 645 (pertaining to persons adjudged guilty of carnal abuse of a female under the age of ten). On the basis of the record before us, however, we are unable to determine whether the circumstances here are sufficient to come within either of these provisions. Nor, for the same reason, can we decide whether jurisdiction for a court to order a castration can be found in the common law of California. Accordingly, on remand the district court must determine whether the judge at the criminal proceeding would have arguably had some common-law or statutory basis for ordering Briley to submit to castration had he been convicted for the child molestation charge. If such authority is found and, thus, judicial immunity attaches, the district attorneys and the physician acting in the capacity of medical examiner, and advising at the "plea bargaining" sessions would be immune from § 1983 liability for misrepresentations about the side effects of the castration.[9]
 
 
 26
 4. Conspiracy under § 1983. We have already held that Briley's privately-retained counsel, and the physicians and hospital in the performance of the surgery, were not acting under color of state law and, therefore, are not prima facie liable under § 1983. Yet, Briley avers that his counsel acted in concert with the judge, district attorneys, and medical examiner as part of a conspiracy to deprive him of his civil rights and to inflict cruel and unusual punishment on him. It is clear that defendants who were engaged in purely private conduct may be found liable under § 1983 if it is established that they have acted in concert with another party against whom a valid claim can be stated. See Gillibeau v. City of Richmond, 417 F.2d 426, 430 (9th Cir. 1969); Haldane v. Chagnon, 345 F.2d 601, 604-05 (9th Cir. 1965); Kletschka v. Driver, 411 F.2d 436, 449 (2d Cir. 1969). Hence, if on remand the Government defendants are found to be without immunity for their participation in the "plea bargain," Briley's private counsel may still be vulnerable to § 1983 liability for conspiracy with another party validly subject to a § 1983 claim.[10]
 
 B. Section 1985(3)
 
 27
 To state a cause of action under § 1985(3),[11] it must be asserted that the defendants conspired to deprive a plaintiff (or a class of persons of which the plaintiff is a member) of equal protection of the laws, thereby causing injury to him or his property. Griffin v. Breckenridge, 403 U.S. 88, 102-03, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); Lopez v. Arrowhead Ranches, 523 F.2d 924, 926-28 (9th Cir. 1975); Arnold v. Tiffany, 487 F.2d 216, 217-19 (9th Cir. 1973), cert. denied, 415 U.S. 984, 94 S.Ct. 1578, 39 L.Ed.2d 881 (1974). The Supreme Court made it clear in Griffin that § 1985 was not "intended to apply to all tortious, conspiratorial interferences with the rights of others," but only to those which were founded upon "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." 403 U.S. at 101-02, 91 S.Ct. at 1798.
 
 
 28
 In the instant action, Briley fails to allege that the "plea bargaining" arrangement or the castration was motivated by racial or any other invidiously discriminatory animus. Thus, his complaint fails to state a claim under § 1985(3) and was, therefore, properly dismissed. Fed.R.Civ.P. 12(b)(6).
 
 Pendent State Claims
 
 29
 Having vacated the lower court's order dismissing Briley's § 1983 claims raised on appeal, we also vacate the order dismissing his pendent legal and medical malpractice claims.
 
 
 30
 AFFIRMED as to the § 1985(3) claim; VACATED and REMANDED as to the § 1983 claims and pendent state claims.
 
 
 31
 The parties shall bear their own costs.
 
 
 
 *
 Hon. Elisha Avery Crary, United States District Judge for the Central District of California, sitting by designation
 
 
 [1]
 The State of California was previously dismissed by stipulation of the parties. The County of San Diego was dismissed upon its own motion on the ground that a municipal corporation is not a "person" for purposes of 42 U.S.C. §§ 1983 and 1985(3). See Aldinger v. Howard, 427 U.S. 1, 5, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1975); City of Kenosha v. Bruno, 412 U.S. 507, 511-14, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); Moor v. County of Alameda, 411 U.S. 693, 706, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973); Monroe v. Pape, 365 U.S. 167, 187-92, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); Oakley v. City of Pasadena, 535 F.2d 503, 505 (9th Cir. 1976)
 
 
 [2]
 Briley does not challenge the dismissals of the judge presiding at the criminal proceedings and one of the district attorneys for lack of service. Nor does he question the dismissals of the County of San Diego and the State of California
 
 
 [3]
 42 U.S.C. § 1983 provides as follows:
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
 
 
 [4]
 Briley alleges facts that would ordinarily constitute common-law fraud or deceit. We see no reason not to allow such an action so long as the plaintiff alleges that defendant acted under color of state law to deprive him of a right, privilege, or immunity secured by the Constitution and laws of the United States. See Sanders v. Erreca, 377 F.2d 960, 962-64 (9th Cir. 1967), cert. denied, 389 U.S. 1039, 88 S.Ct. 776, 19 L.Ed.2d 828 (1968); Walker v. Bank of Am. Nat'l Trust & Sav. Ass'n, 268 F.2d 16, 24-26 (9th Cir. 1959); Powell v. Radkins, 506 F.2d 763, 765 (5th Cir.), cert. denied, 423 U.S. 873, 96 S.Ct. 140, 46 L.Ed.2d 104 (1975). The appellant clearly asserts a right which falls within the scope of the statute's protection. See Skinner v. Oklahoma, 316 U.S. 535, 541, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942); Sparkman v. McFarlin, 552 F.2d 172 (7th Cir. 1977); Cox v. Stanton, 529 F.2d 47, 50 (4th Cir. 1975); Wade v. Bethesda Hosp., 337 F.Supp. 671 (S.D.Ohio 1971). See also Bouse v. Bussey, (9th Cir. 1977) (No. 76-1274, July 21, 1977, slip op.)
 The Supreme Court has given clear indication that the rights under the Civil Rights Act and the rights arising under the state common law, although similar, are nonetheless distinct remedies. Accordingly, although the same set of facts may give rise to violations of both the federal statute and the state common law, the rights protected are not necessarily identical nor are the criteria essential to state a cause of action necessarily the same under both. See Monroe v. Pape, 365 U.S. 167, 180, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); Martin v. Duffie, 463 F.2d 464, 467 (10th Cir. 1972).
 
 
 [5]
 Briley also argues that his injury was of a "continuing nature" such that the cause of action arose on the date the injury became manifest. In the alternative, he asserts that the side effects resulting from the castration represent an injury that is "separate and distinct" from the original mutilation and, accordingly, the cause of action did not accrue until discovery. Since we hold, infra, that Briley's cause of action against those who participated in the "plea bargain" did not accrue until he discovered the fraud or could have done so in the exercise of reasonable diligence, we need not reach the merits of these assertions
 
 
 [6]
 We are aware of California Code of Civil Procedure § 352 which allows for tolling the limitations period on account of minority, insanity, and imprisonment, none of which, however, is relevant here. See Ney v. State of California, 439 F.2d 1285, 1287 (9th Cir. 1971) (recognizing § 338(1) as the applicable statute of limitations for § 1983 actions brought in California, but nevertheless applying § 352(3) to a case where the plaintiff had been previously imprisoned)
 
 
 [7]
 Indeed, it was a concern for the remedial nature of § 1983 and the important constitutional rights it sought to protect that led us originally to adopt the three-year limitations period of § 338(1) one which is longer than most specific, tort limitation periods. See Smith v. Cremins, supra, 308 F.2d at 190. A Second Circuit case which we cited in Smith as adopting the state limitations period for "liability created by statute," see Bomar v. Keyes, 162 F.2d 136, 140 (2d Cir. 1947), has likewise been modified to include a tolling provision for discovery in cases where fraud or concealment is alleged. See Kaiser v. Cahn, 510 F.2d 282, 287 (2d Cir. 1974); Moviecolor Ltd. v. Eastman Kodak Co., 288 F.2d 80, 84-86 (2d Cir. 1961). See also Cox, supra, 529 F.2d at 50
 
 
 [8]
 We assume that the immunity of the district attorneys would extend to the medical examiner if he acted pursuant to their direction. Cf. Gregory v. Thompson, 500 F.2d 59, 65 n. 6 (9th Cir. 1974); Gillibeau v. City of Richmond, 417 F.2d 426, 429 (9th Cir. 1969); Haldane v. Chagnon, 345 F.2d 601, 603 (9th Cir. 1965) (all dealing with immunity for those acting at direction of judge). His liability as an independent actor is discussed in note 10 infra
 
 
 [9]
 It should be noted that the question of whether immunity attaches will, of course, overlap with the question of whether the district attorneys' representations concerning their authority to include castration in the "plea bargain" were fraudulent. If immunity attaches, it must be found that the district attorneys arguably had the authority to include castration in the "plea bargain," thereby disproving the charge of fraud as to those representations. The alleged fraud as to the side effects of the castration, however, would still be at issue as a factual matter, but the district attorneys would be immune
 
 
 [10]
 It is unclear whether a private party who conspires with a state official who is clothed with immunity is liable under § 1983. Dictum in this circuit implies that no liability attaches. See Haldane v. Chagnon, 345 F.2d 601, 604 (9th Cir. 1965). The result is based on the theory that, because no valid claim could be stated against the immune state official, the "color of state law" basis upon which a § 1983 action would lie is eliminated. It is interesting to note that an immune official conspiring with a non-immune official always retains his immunity for acts committed in the conspiracy. See Hoffman v. Halden, 268 F.2d 280, 301 (9th Cir. 1959). Although the non-immune official in this situation would still be individually liable under § 1983, whether he is liable for the conspiracy appears to be an open question
 
 
 [11]
 42 U.S.C. § 1985(3) provides as follows:
 (3) If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.