Rafael RIVERA FERNANDEZ,
Plaintiff, Appellant,

v.

Carlos CHARDON, etc., et al.,
Defendants, Appellees.

No. 80–1237 *.

United States Court of Appeals,
First Circuit.

Argued Feb. 3, 1981.

Decided May 8, 1981.

Sheldon Nahmod, Chicago, Ill., with whom Hiram R. Cancio, Harry R. Nadal-Arcelay, Jaime R. Nadal-Arcelay, Blanca I. Mera-Roure, Jesus R. Rabell-Mendez and Cancio, Nadal & Rivera, San Juan, P. R., were on briefs, for plaintiff, appellant, Rafael Rivera-Fernandez, Angel L. Arzon-Mendez, Ramon A. Vega Cruz, Laura L. Santos-Roa, Angel L. Allende-Velazquez, Evelyn Irizarry-Escobar, Enrique Diaz-Maldonado, Jose D. Nieves-Rivera, Aida L. San-

---

* This opinion disposes of appeals in the following additional cases: No. 80–1238, Angel L. Arzon Mendez v. Carlos Chardon, et al. No. 80–1245, Ramon A. Vega Cruz v. Carlos Chardon, et al. No. 80–1247, Laura L. Santos Roa v. Carlos Chardon, et al. No. 80–1249, Angel Luis Allende v. Carlos Chardon, et al. No. 80–1254, Evelyn Irizarry Escobar v. Carlos Chardon, et al. No. 80–1339, Enrique Diaz Maldonado v. Carlos Chardon, et al. No. 80–1340, Jose D. Nieves Rivera v. Carlos Chardon, et al. No. 80–1341, Aida L. Sanchez de Negron v. Carlos Chardon, et al. No. 80–1342, Herminia A. Ortiz-Ortiz v. Carlos Chardon, et al. No. 80–1343, Jose R. Munoz Rivera v. Carlos Chardon, et al. No. 80–1344, Eduardo Tarafa Gonzalez v. Carlos Chardon, et al. No. 80–1345, Gladys Rosado Acevedo v. Carlos Chardon, et al. No. 80–1392, Roberto Velazquez Nieves v. Carlos Chardon, et al. No. 80–1404, Sara Valezquez Concepcion v. Carlos Chardon, et al. No. 80–1506, Cecilio Alvarez Plajas v. Carlos Chardon, et al. No. 80–1507, Enrique Rosado Alverio v. Carlos Chardon, et al. No. 80–1508, Julia Martinez Vda de Calderon v. Carlos Chardon, et al. No. 80–1509, Saquia Azize Mawad v. Carlos Chardon, et al. 80–1510, Isaias Torres Sanchez v. Carlos Chardon, et al. No. 80–1511, Miguel Alvelo Rodriguez v. Carlos Chardon, et al. No. 80–1512, Irma I. Baldoni de Valencia v. Carlos Chardon, et al. No. 80–1513, Manuel Rosas Lebron v. Carlos Chardon, et al.

chez De Negron, Herminia Ortiz-Ortiz, Jose R. Munoz-Rivera, Eduardo Tarafa-Gonzalez, Gladys Rosado-Acevedo, Roberto Velazquez-Nieves, Sara Velazquez-Concepcion, Cecilio Alvarez-Plajas, Enrique Rosado-Alverio, Julia Martinez Vda. De Calderon, Saquia Azize-Mawad, Isaias Torres-Sanchez, Miguel Alvelo-Rodriguez, Irma L. Baldoni De Valencia, and Manuel Rosas-Lebron.

Roberto L. Cordova, San Juan, P. R., with whom Brown, Newsom & Cordova and Ines Equia Miranda, San Juan, P. R., were on brief, for defendants, appellees.

Before CAMPBELL, BOWNES and BREYER, Circuit Judges.

CAMPBELL, Circuit Judge.

Each of these 23 cases raises the issue of when the statute of limitations began to run on an employee's claim that he or she was wrongfully demoted or fired because of political affiliation: the precise question is whether the limitations period began upon receipt of advance notification of demotion or discharge, or whether it dated from the time the employee stopped working at the job from which he or she was removed.

The plaintiffs in these 23 cases were all employed during the 1976–1977 school year as non-tenured administrators in the Commonwealth of Puerto Rico Department of Education. The plaintiffs were all active members of the Popular Democratic Party which was in power in Puerto Rico in the fall of 1976. A gubernatorial election was held in that year, in which a candidate of the New Progressive Party was elected. In March 1977 the new governor appointed defendant Carlos Chardon as Assistant Secretary of Public Education in charge of personnel. Sometime between June 3 and June 17, 1977, each plaintiff received a letter advising him or her that "the appointment to the position you now occupy expires with the termination of the present

school year." The letters received by 20 of the plaintiffs indicated that they would be reinstated to tenured positions they had previously held as teachers or lower level administrators. The other three, who had not previously held tenured positions, were told that their employment with the Department would cease. Each of the 23 letters indicated a date, between June 30 and August 8, when the action would take effect. The plaintiffs responded, most within a few days of receiving the notice, by a letter to defendant stating that "I am not in agreement with your decision .... To this effect I have remitted copy of the same to the Puerto Rico Teachers Association so that said organization may instruct its Legal Division to take the necessary action." The demotions and terminations all occurred as scheduled.

On June 19, 1978, one Jose Ortiz Rivera, another Department of Education employee who had suffered similar treatment, filed suit in the United States District Court for the District of Puerto Rico under 42 U.S.C. § 1983. Ortiz Rivera claimed that the action had been taken because of his political affiliation, in violation of the first and fourteenth amendments to the United States Constitution. He purported to represent a class of over 100 persons, including these 23 plaintiffs. Class certification was denied, and each of these plaintiffs then filed a separate complaint, making essentially the same substantive allegations. The district court dismissed all 23 complaints on the ground that they were barred by the one-year statute of limitations applicable to section 1983 actions under 31 L.P.R.A. § 5298(2).

On appeal, the parties are agreed that section 5298 is the applicable statute of limitations,[1] and that the present actions were commenced, for limitations purposes, on June 19, 1978, when Ortiz Rivera filed his complaint. If the one-year limitations

1. The statute reads, in applicable part,
"The following prescribe in one year:
(1) ...
(2) Actions to demand civil liability for grave insults or calumny, and for obligations aris-
ing from the fault or negligence in section 5141 of this title, from the time the aggrieved person has knowledge thereof."

period began to run when plaintiffs received notice of demotion or discharge (in each case before June 19, 1977), the current actions are untimely (unless the statute was interrupted, *see* note 2, *infra* ). However, if the limitations period began later, when the demotion or discharge took effect (in each case after June 19, 1977), the present cases are not time barred. We hold that plaintiffs' cause of action accrued, and the limitations period began, on the date when the demotions or discharges took effect.[2]

 Since section 1983 fixes no limitations period of its own, federal courts in section 1983 actions apply the limitations period provided by state law for the most closely analogous type of action, along with any state tolling rules. *Board of Regents v. Tomanio,* 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980). When the cause of action accrues, however, is a question of federal law. *Rubin v. O'Koren,* 621 F.2d 114, 116 (5th Cir. 1980); *Briley v. State of California,* 564 F.2d 849, 855 (9th Cir. 1977); *Cox v. Stanton,* 529 F.2d 47, 50 (4th Cir. 1975); *Kaiser v. Cahn,* 510 F.2d 282, 285 (2d Cir. 1974). *Cf. Cope v. Anderson,* 331 U.S. 461, 464, 67 S.Ct. 1340, 1341, 91 L.Ed. 1602 (1947) (federal law determines when cause of action accrued in suit by receiver of national bank to collect assessment from stockholder); *Rawlings v. Ray,* 312 U.S. 96, 98, 61 S.Ct. 473, 474, 85 L.Ed. 605 (1940) (same). In the instant cases, the district court held that a cause of action accrues "when plaintiff knows or has reason to know of the injury which is the basis of the action." The court found that the plaintiffs knew of the harm when they received the letters more than one year before the suit was filed. The court relied on two federal cases, *United States v. Kubrick,* 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979) (medical malpractice claim against Veterans Administration under Federal Tort Claims Act) and *Mitchell v. Hendricks,* 431

F.Supp. 1295 (E.D.Pa.1977) (section 1983 claim by prisoner for injury resulting from denial of medical treatment). In both of these cases, the plaintiff had no reason to know of the physical harm underlying his claim until sometime after it had occurred. The rule of accrual at the time of notice therefore served to extend, rather than to shorten, the limitations period. Similarly, a rule based on notice was applied to extend the limitations period in *Lavallee v. Listi,* 611 F.2d 1129 (5th Cir. 1980) (prisoner injured by negligently performed medical procedure; limitations period began only when prisoner knew or should have known that procedure was the cause of his continuing symptoms); *Briley v. State of California,* 564 F.2d 849 (9th Cir. 1977) (section 1983 action for fraudulently induced plea bargain; limitations period began only when plaintiff discovered fraud or could have done so); *Cox v. Stanton,* 529 F.2d 47 (4th Cir. 1975) (section 1983 action for forced sterilization; limitations period began only when plaintiff learned that the operation was permanent); and *Young v. Clinchfield Railroad,* 288 F.2d 499 (4th Cir. 1961) (Federal Employer's Liability Act action for disease resulting from exposure to toxic material; limitations period began only when disease diagnosed).

We are aware of only one case which has applied this rule prospectively, *Bireline v. Seagondollar,* 567 F.2d 260 (4th Cir. 1977), *cert. denied,* 444 U.S. 842, 100 S.Ct. 83, 62 L.Ed.2d 54 (1979). In that case a nontenured university instructor was notified in May 1970 that her contract would not be renewed at the end of the 1970–71 school year. Citing *Cox v. Stanton* and *Young v. Clinchfield Railroad,* the court held that the instructor's cause of action under section 1983 had accrued when she received notice, even though her termination had not yet occurred. The court did not discuss the policies underlying the notice rule, nor did it explicitly consider whether those policies

---

2. This decision makes it unnecessary to reach plaintiffs' alternative argument that the running of the limitations period was interrupted by their letters of protest, which they characterize as "extra-judicial claims" within 31 L.P. R.A. § 5303.

should properly be applied where notice precedes the challenged action.[3]

In *Egleston v. State University College at Geneseo*, 2 Cir., 535 F.2d 752 (1976), the Second Circuit took the opposite view on similar facts. The plaintiff, a non-tenured faculty member, was notified in May 1972 that her contract, due to expire in June 1973, would not be renewed. In her suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., the court held that June 1973 was the crucial date, since her "primary grievance . . . is rooted in her discharge," and "Appellant's discharge was consummated only when she left the university—or, possibly, when a replacement was hired." *Id.*, at 755.[4]

Four other circuits have indicated agreement with *Egleston*, although in none of these cases was the same issue directly presented for decision. *Rubin v. O'Koren*, 621 F.2d 114, 116 (5th Cir. 1980) (due process claim under section 1983 by discharged instructor); *Kryzewski v. Metropolitan Government*, 584 F.2d 802, 806 (6th Cir. 1978) (sex discrimination action under Title VII by discharged policewoman); *Bonham v. Dresser Industries*, 569 F.2d 187, 192 (3d Cir. 1977), *cert. denied*, 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978) (age discrimination claim under 29 U.S.C. § 623); *Moses v. Falstaff*, 525 F.2d 92, 95 (8th Cir. 1975) (age discrimination claim under section 623). *See also Greene v. Carter Carburator Co.*, 532 F.2d 125, 127 (8th Cir. 1976) (Title VII claim).

We think the court in *Bireline*, and the district court in the present cases, miscon-

strued the notice rule. In our view, that rule has developed as a safeguard against unfairness to plaintiffs who, through no fault of their own, are unaware of their injuries until after the tortious act occurs. In such cases, the rule operates to postpone the running of the limitations period in order to give the plaintiffs a reasonable time in which to act once they have learned that they have suffered harm. The notice rule does not, however, alter the general rule that no cause of action exists until an unlawful act has occurred. Tort law has not traditionally recognized a doctrine of "anticipatory breach" comparable to that in contracts.[5]

 The issue of when the cause of action accrues depends, we believe, on when the alleged unlawful act occurred. It is necessary, therefore, to identify the unlawful act. Where, as here, the claim is that an employment decision was made for a prohibited reason, it could be argued that the unlawful act was the making of the decision, rather than the implementation of it. But we think such a refined rule would depart too sharply from the understanding of ordinary people. The plaintiffs in these cases are complaining that they were demoted or discharged, not merely that a decision was made on a particular occasion, of which notice was then given, to take such action against them. Had the decision been made but not yet implemented, equitable relief might have been sought to forestall irreparable harm, but it is unlikely that plaintiffs would have sought or received damages until or unless the threatened ac-

---

3. *Bireline* is cited with apparent approval in *Jackson v. Hayakawa*, 605 F.2d 1121, 1127 (9th Cir. 1979), *cert. denied*, 445 U.S. 952, 100 S.Ct. 1601, 63 L.Ed.2d 787 (1980), but it is unclear whether this aspect of the holding in *Bireline* was actually applied in *Jackson*; the court there focussed on the date of notice, but the facts as stated in the opinion give the impression that the plaintiff had stopped working before he received notice of his termination.

4. The Second Circuit followed this holding in *Noble v. University of Rochester*, 535 F.2d 756 (1976).

5. We note that the Puerto Rico statute of limitations provides that actions prescribe within one year "from the time the aggrieved person has knowledge thereof." *See* note 1, *supra*. No Puerto Rico authorities have been called to our attention, however, which suggest that this rule is meant to apply in cases, such as the present, where notice has been given in anticipation of the actual harm. Thus, while federal law would be controlling on accrual in any event, we are aware of nothing inconsistent with our analysis in the Puerto Rico statute and precedents. Indeed, the general federal accrual rule appears no different from that of Puerto Rico.

---

tion was consummated.[6] The alleged unlawful act was revocable, incomplete and, for practical purposes, nonexistent until the actual demotion or discharge.[7]

Moreover, important policies of judicial administration favor a rule based on the date of implementation. While the date of notice in the present cases was easily established, other cases would surely arise in which resolution of that question would require lengthy proceedings. Notice might be oral, or it might be ambiguously phrased, or it might be transmitted by one whose authority is subject to question. We see no value in requiring courts and parties to devote their resources to litigating the adequacy of notice, when the date of the action itself is easily determined. In saying this, we are aware that the Supreme Court has declined to reach out for an easily identified date when that date bears no genuine relationship to the act of which plaintiff complains. *Compare Delaware State College v. Ricks*, —— U.S. ——, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980) (date of termination not sufficiently connected to the challenged denial of tenure), discussed *infra*. But where, as here, the date that is most closely related to the plaintiffs' claim is also the date most easily identified, we think concern for adoption of the rule that best promotes certainty and eliminates litigation over technical niceties is well warranted.

After the district court's decision of these cases, the Supreme Court decided *Delaware State College v. Ricks, supra.* Defendants contend that that decision compels affirmance here. We disagree. Ricks, a black Liberian instructor, was informed in June 1974 that the faculty of Delaware State College had voted to deny him tenure. In accordance with the school's usual practice, he was thereafter granted a one-year terminal contract, after which his employment with the school ended. In his suit alleging discrimination on the basis of national origin, Ricks contended that the limitations period under Title VII began to run only when he left the university in June 1975. The Supreme Court rejected this argument and concluded that Ricks' cause of action had accrued when he was notified of the denial of tenure, in June 1974, and that his suit was therefore barred. The Court focussed on the allegations of Ricks' complaint, which it found to charge discrimination in the denial of tenure, not in the discharge or any other subsequent action. The Court held that the denial of tenure was the "unlawful employment practice" within the meaning of Title VII, and that the date of that action was therefore the beginning of the limitations period. Three justices, in dissent, accepted the majority's analysis (*i. e.*, that denial of tenure, not discharge, was the unlawful employment practice) but placed the denial of tenure at a later date because of the later decision of an internal grievance board. Justice Stevens, alone among the justices, took the view that denial of tenure is analogous to advance notice of discharge. Based on that analogy, he argued that the date of discharge should control.

Refusal of the *Ricks* majority to adopt Justice Stevens' analogy does not seem to us in any way to repudiate the precedents to which he sought to draw an analogy. The majority held merely that the denial of tenure in the academic setting is fundamentally different from a notice of discharge; it is a distinct and separate employment action, with important and far-reaching consequences for all aspects of the employee's status. While denial of tenure is often followed by discharge, it is not always, and

---

**6.** We are not now faced with the question whether a mere threat of discharge or demotion, intended to chill the exercise of first amendment rights, would in itself give rise to a cause of action. *Compare Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). Plaintiffs here complain not of a mere threat, but of consummated action.

**7.** We do not read the complaints in these cases as charging a "continuing violation" in which the decision and the act were two consecutive elements. *See Goldman v. Sears, Roebuck & Co.*, 607 F.2d 1014 (1st Cir. 1979), *cert. denied*, 445 U.S. 929, 100 S.Ct. 1317, 63 L.Ed.2d 762 (1980). Rather, in our view each complaint charges a single act of discrimination which was consummated on the date that each plaintiff was discharged or demoted.

the consequences of denial of tenure are not dependent on its being followed by discharge. The Court found that Ricks' complaint was based on the denial of tenure, which was effective immediately; it followed, therefore, that the limitations period began as soon as Ricks received notice of that action. Here, plaintiffs complain of discharges and demotions, not of any distinct event that occurred on an earlier date. The letters notifying them of the planned actions were notice and nothing more; they were not actions in themselves comparable to the denial of tenure.[8]

To be sure, as we have said, one can argue that the notices themselves mirror the allegedly discriminatory motives of the defendants. One can also argue that a suit for injunctive relief might lie after receipt of notice (or, indeed, even before) to forestall threatened irreparable harm. Still plaintiffs' quarrel is with their demotions and discharges—not with the notices themselves. No actual harm is done until the threatened action is consummated. Until then, the act which is the central focus of the plaintiffs' claim remains incomplete. Such was not the situation in *Ricks*, where the denial of tenure was itself the completed act being challenged.

We conclude, therefore, that *Ricks* is inapplicable to these cases, and that the district court erred in dismissing the complaints.

*The judgments of the district court are vacated and the cases are remanded for further proceedings not inconsistent herewith.*

---

**8.** Were the decision separated from its implementation by a greater time period than is involved here, and were the decision-making process more formal and definitive than appears here, the analogy to a tenure decision would be closer. But at least where the action taken follows quite soon after receipt of the notice, as happened here, we view the date of implementation as determinative for limitations purposes.