EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,

v.

LOCAL UNION NO. 3, INTERNATIONAL UNION OF OPERATING ENGINEERS, et al., Defendants.

Jess B. PEREZ et al., Plaintiffs,

v.

OPERATING ENGINEERS LOCAL UNION NO. 3 et al., Defendants.

Regino DeLEON et al., Plaintiffs,

v.

OPERATING ENGINEERS LOCAL UNION NO. 3 et al., Defendants.

Johnny WILLIAMS et al., Plaintiffs,

v.

LOCAL UNION NO. THREE, INTERNATIONAL UNION OF OPERATING ENGINEERS, et al., Defendants.

Nos. C–71–1277, 898, 974 and 1515 RFP.

United States District Court, N. D. California.

Nov. 26, 1975.

**730**

Peter A. Janiak, Equal Employment Opportunity Commission, San Francisco, Cal., for plaintiff Commission.

Henry S. Hewitt, Russell W. Galloway, Jr., and Peter E. Sheehan, Legal Aid Society of Alameda County, Oakland, Cal., for plaintiff Williams.

Brian Paddock, Western Center on Law & Poverty, Sacramento, Cal., for plaintiffs.

Thomas E. Stanton, Jr., Johnson & Stanton, P. H. McCarthy, Jr., McCarthy, Johnson & Miller, San Francisco, Cal., James P. Watson, Cox, Castle, Nicholson & Weekes, Los Angeles, Cal., for defendants Operating Engineers Local Union No. 3, Associated General Contractors of California and Western Steel.

Ralph B. Hoyt, Hoyt & Goforth, Oakland, Cal., for certain defendants.

## MEMORANDUM AND ORDER

PECKHAM, Chief Judge.

Counsel for the Equal Employment Opportunity Commission, plaintiffs in civil action No. C–71–1277 RFP, and for the private plaintiffs in civil actions, No. C–71–898 RFP, No. C–71–974 RFP and No. C–71–1515 RFP, have moved the court for various specific injunctive orders directed to the defendants in each of the above-named actions regarding the utilization of the property known as Rancho Murietta. Defendants question the jurisdiction of the court to issue the relief requested. The parties have briefed this question thoroughly and oral argument was heard on Friday, September 12, 1975.

## I. FACTUAL CHRONOLOGY

In order to better understand the contentions of the parties, it is necessary to review, briefly, the chronology of events that have preceded the jurisdictional issue now before the court.

The first two private plaintiffs' actions, *Perez et al. v. Operating Engineers Local Union No. 3 et al.*, No. C–71–898 RFP and *DeLeon et al. v. Operating Engineers Local Union No. 3 et al.*, No. C–71–974 RFP were filed in March, 1971, and May, 1971, respectively. The government's suit, *U. S. A. v. Operating Engineers Local 3 et al.*, No. C–71–1277 RFP (the caption of which has been changed to *Equal Employment Opportunity Commission v. Local Union No. 3, International Union of Operating Engineers et al.*), was filed on July 2, 1971. The third private lawsuit, *Williams, et al. v. Local Union No. 3, International Union of Operating Engineers, et al.*, No. C–71–1515 RFP, was filed on August 16, 1971. On January 10, 1972, the court certified the private plaintiffs' suits as class actions. On January 11, 1972, the court entered a preliminary injunction in civil action No. C–71–1277 RFP, the terms of which had been consented and agreed to by counsel for the United States and the defendants. On March 13, 1972, the private plaintiffs requested that the court grant injunctive relief over and above that contained in the preliminary injunction. On July 18, 1972, the court issued a memorandum and order which consolidated the four cases and determined that the private plaintiffs would be permitted to seek preliminary injunctive relief despite the preliminary injunction already obtained by the government. Thereafter, the United States and the defendants reached agreement on the contents of a consent decree in resolution of the government's case. In January, 1973, a hearing was held to determine whether the court should approve and enter the consent decree. Private plaintiffs presented evidence and oral argument in opposition to the entry of the decree, including evidence regarding the utilization of Rancho Murietta. Despite the arguments presented by private plaintiffs, the court ordered the entry of the consent decree and stayed the private actions pending further review. Attorney's fees were awarded to private plaintiffs for their participation in the case. On December 13, 1974, the court vacated the stay of the private class actions, and after some discovery but less than was requested, plaintiffs moved the court for injunctive relief regarding the utilization of Rancho Murietta, thereby raising the question of the court's power to enter such relief.

## II. THE COURT'S JURISDICTION

Assuming that plaintiffs establish their claims, there are two apparent sources from which the court can obtain jurisdiction to issue injunctive relief with regard to Rancho Murietta: (1) the consent decree; and (2) the private class actions. We will consider them in order.

### A. The Consent Decree

The court's power to enforce the specific provisions of the consent decree is not and cannot be disputed. Therefore, the government's allegation that the manner in which defendants have utilized Rancho Murietta violates provisions in paragraphs 1, 9, 12, 14 and 18 of the consent decree clearly empowers the court to hold a hearing of some kind on the matter. However, it does not fully resolve the jurisdictional issue as the parties are in dispute as to the scope of such a hearing and the parties who may participate in it.

Plaintiffs contend that the court is not limited to enforcing the specific provisions of the decree. Rather, they contend that the court has the power to issue supplemental injunctive relief with respect to Rancho Murietta based on a showing that the purpose of the consent decree is not being achieved. They point to the percentage minority participation levels, which are specifically set forth on page two of the consent decree, and which were to be achieved within five years of the entry of the consent decree, and argue that since these levels cannot possibly be achieved within that time period, a sufficient basis for the court

to order further injunctive relief, pursuant to paragraph 22 of the consent decree, exists. That paragraph provides that "the court will retain jurisdiction of this matter . . . and order any further relief which may be necessary or appropriate."

■ Such relief would appear to be especially appropriate here in view of the decree's explicit purpose "to advance the effectuation of rights to equal opportunity by Title VII and to effectuate the voluntary agreement" designed to implement the very minority participation levels that are now unable to be achieved. Moreover, the ordering of supplemental relief is not precluded by the rule of *United States v. Armour and Co.*, 402 U.S. 673, 91 S.Ct. 1752, 29 L.Ed.2d 256 (1971), as is contended by defendants, since plaintiffs' request for such relief is based on language that is explicitly set forth within the "four corners" of the consent decree. Nevertheless, this consent decree is a carefully negotiated and worded settlement agreement which was intended to govern the subsequent actions of the parties. Thus, one general paragraph allowing the court to retain jurisdiction and enter further relief when necessary or appropriate does not give the court the power to order relief which would effectively rewrite the decree and thereby negate the other 21 narrowly drafted paragraphs of the agreement. On the other hand, the 22nd paragraph of this decree clearly contemplates the order of some additional relief if necessary and appropriate. Since the court can only tell if relief is necessary or appropriate when all the facts which color or impale the controversy are heard, the government should be allowed to show that the defendants' utilization of Rancho Murietta is violating the spirit, as well as the letter of the consent decree. *See United States v. I. T. T. Continental Baking Co.*, 420 U.S. 223, 95 S.Ct. 926, 43 L.Ed.2d 148 (1975). It may be that the result of the government's proof may only be to show that Rancho Murietta could be, but is not required to be, operated in a more efficient fashion. Even so, the court still has jurisdiction over the controversy and must, therefore, hear the evidence to be offered.

**B. *The Private Class Actions***

■ There remains the question of what role the private plaintiffs should have in this proceeding. To the extent that the court's jurisdiction is based on various provisions of the consent decree, the private plaintiffs, who were not parties to that decree, have no standing to prosecute their Rancho Murietta action. This does not, however, necessarily foreclose their participation in the proceeding, for example, as friends of the court. *See Strasser v. Doorley*, 432 F.2d 567, 569 (1st Cir. 1970). Yet, private plaintiffs maintain that they have an independent right to seek injunctive relief with regard to Rancho Murietta by prosecuting their private class actions, and that the court has both jurisdiction to hear their claim and power to grant the relief they request. Private plaintiffs rely in part on an earlier decision of this court which recognized their independent right to proceed (reported as *United States v. Local No. 3, Operating Engineers*, at 4 F.E.P. Cases 1088, 1093 (N.D.Cal.1972), as well as the court's order of December 13, 1974, lifting a stay that had prevented them from proceeding. Defendants offer several arguments in opposition.

■ First, defendants contend that private plaintiffs should be barred from relitigating issues resolved by the consent decree, or alternatively, that principles of collateral estoppel preclude private plaintiffs from obtaining additional injunctive relief. Defendants acknowledge a line of cases which have permitted private plaintiffs to litigate their cases despite the entry of a consent agreement to which private plaintiffs were not party to or in privity with, *see e. g., Rodriguez v. East Texas Motor Freight*, 505 F.2d 40, 65–66 (5th Cir. 1974); *Williamson v. Bethlehem Steel Corp.*, 468 F.2d 1201 (2d Cir. 1972), *cert. denied*, 411 U.S. 931, 93 S.Ct. 1893, 36 L.Ed.2d 390 (1973); *Leisner v. New York Telephone Co.*, 358 F.Supp. 359 (S.D.N.Y.1973), but argue that those cases are not applicable here where private plaintiffs have participated in all critical stages of the litigation. De-

fendants take particular note of the lengthy testimony and oral argument which private plaintiffs offered at a January, 1973, hearing with regard to whether the court should approve and enter the proposed consent decree. They maintain that in contrast to the situation which existed in the *Rodriguez-Williamson* line of cases, private plaintiffs had full opportunity to object to the entry of the consent decree and to litigate the issues in the same manner as the government. Therefore, they contend private plaintiffs should be similarly precluded from seeking additional relief. Alternatively, defendants contend that even if private plaintiffs were not in privity with the government, their subsequent conduct in accepting attorney fees and in attempting to ensure defendants' compliance with certain provisions of the consent decree constitutes an adoption of the decree and bars them from seeking additional relief in their own independent actions.

Defendants do not cite any cases which have taken the course that defendants' urge upon this court. But even assuming defendants' legal argument to be sound, the consequences that they attach to private plaintiffs' actions in this case do not follow.

It would indeed be anomalous to hold that private plaintiffs' vocal and active opposition to the government's position that the consent decree was adequate put them "in privity" with the government on this issue. Under such a theory, private plaintiffs would have been better advised to voice no objections to the proposed decree, instead to surprise defendants with their demands for additional relief months and possibly years later. Were such a course followed, defendants would no doubt argue, and rightfully so, that it was a rather late date for private plaintiffs to suddenly raise objections to the decree after months of silent assent. Certainly, the court should

not penalize private plaintiffs for urging the court against taking a course which they considered unwise and which they would eventually try to challenge.

Moreover, as was so in the *Rodriguez-Williamson* line of cases, private plaintiffs and the government did not have identical interests. Although both parties were obviously seeking to eliminate defendants' unlawful employment practices, the government also had the obligation to protect the "public interest" and to take account of conditions which did not enter into private plaintiffs' calculations. *Cf. Trobovich v. United Mine Workers*, 404 U.S. 528, 538–39, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972). Generally, while the government, hampered by a lack of sufficient resources and a large case load, may be willing to compromise their demands in order to gain prompt and possibly nationwide relief, private plaintiffs, concerned only with their own interests, may be willing to hold out for complete injunctive relief. *See Rodriguez v. East Texas Motor Freight*, 505 F.2d 40, 66 (5th Cir. 1974).

Finally, private plaintiffs' occasional acts of threatening to proceed with their independent actions if certain provisions of the consent decree were not complied with do not constitute a legal adoption of the consent decree. It is not inconsistent for private plaintiffs to have believed the consent decree to be inadequate and at the same time to have taken steps to ensure defendants' compliance with some of its provisions. Even if inadequate, the decree was at least a first step toward the enlargement of equal employment opportunities that it was in private plaintiffs' interest to have helped enforce. *See Leisner v. New York Telephone Company*, 358 F.Supp. 359, 370 (S.D.N.Y.1973). Similarly, private plaintiffs' acceptance of attorney fees[1] would not indicate an adoption on their part

---

1. On June 27, 1973, the court approved a stipulation agreement of the parties whereby defendant Affirmative Action Trust agreed to pay the Legal Aid Society of Alameda County the sum of $45,000 as reimbursement for costs, including attorney's fees, in connection with *Williams*, C–71–1515 RFP, and to pay California Rural Legal Assistance Inc. and Western Center on Law and Poverty the total sum of $65,000 as reimbursement for costs, including attorney's fees, in connection with *DeLeon*, C–71–974 RFP. Subsequently, the court awarded $40,000 to plaintiffs in *Perez*, C–71–898 RFP,

of the consent decree. Defendants' argument that to receive attorney's fees, private plaintiffs had to be prevailing parties,[2] and that as prevailing parties private plaintiffs are bound by the settlement of the consent decree, misconstrues the definition of the term "prevailing party" as used in Title VII and as applied to the instant litigation.

 The purpose behind Congress's direction that attorney's fees be awarded to the prevailing party in equal opportunity employment cases is to effectuate the policy against racial discrimination by enabling litigants to obtain "competent counsel worthy of contest with the caliber of counsel available to their opposition and to fairly place the economic burden of Title VII litigation," *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 719 (5th Cir. 1974). Accordingly, the amount of the award should not be such that it would discourage others from seeking to attack discriminatory practices. *Schaeffer v. San Diego Yellow Cab Inc.*, 462 F.2d 1002, 1008 (9th Cir. 1972).

In seeking to implement these objectives, the courts have liberally applied the attorney's fee provision of Title VII. *See e. g., Johnson v. Georgia Highway Express, Inc.*, 488 F.2d at 716 and cases cited therein. In *Parham v. Southwestern Bell Telephone Co.*, 433 F.2d 421 (8th Cir. 1970), attorney's fees were awarded to a private plaintiff, who, although not prevailing on his action for damages or injunctive relief, performed "a valuable public service in bringing [the] action," prompted the defendant to comply with the requirements imposed by Title VII, and prevailed in his contentions of racial discrimination against blacks generally prior to his filing of the suit. Similarly, in *Drew v. Liberty Mutual Insurance Co.*, 480 F.2d 69 (5th Cir. 1973), a private plaintiff's action under Title VII was dismissed and she obtained relief solely as a result of an action instituted by the EEOC. Nevertheless, the Fifth Circuit directed the district court to consider the award of attorney's fees to private plaintiff to represent the value of services performed on her behalf by counsel in initially bringing suit.

In the instant case, the parties stipulated that private plaintiffs would be deemed to be "prevailing parties" for the purpose of an award of attorney's fees (Order of June 29, 1973 re: Reimbursements and Costs), and therefore it is not clear in exactly what sense the private plaintiffs were regarded as prevailing parties. However, an examination of the record reveals that many of the factors which justified the awarding of attorney's fees in other instances, *see e. g., Parkham v. Southwestern Bell Telephone Co., supra; Drew v. Liberty Mutual Insurance Co., supra*, were also present here. Private plaintiffs prevailed on most aspects of the case that were resolved, including establishing a prima facie case of discrimination against the defendants. (Memorandum and Order dated July 18, 1972.) Although private plaintiffs did not prevail in their request that the court order relief beyond that found in the final consent decree, were it not for private plaintiff's participation in obtaining additional preliminary relief and in the negotiations of the consent decree, the scope of the consent decree would have been much narrower than it is now. In general, it is apparent that the court's award and approval of attorney's fees to private plaintiffs was intended to compensate them for their overall participation in the suit including their initial investigative work which led to the filing of their individual actions, their agreement with the defendants for certain backpay awards, as well as for their participation in the negotiations between the government and defendants on the question of prospective relief.

 When seen in this light, it is clear that the mere characterization of private

for reimbursement of its costs, including attorney's fees.

**2.** Section 706(k) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(k), provides:

In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or United States, a reasonable attorney's fee as part of the costs . . . .

plaintiffs as prevailing parties is not sufficient to prevent them from seeking further injunctive relief. In awarding attorney's fees to the private plaintiffs in *Perez*, we explicitly recognized that to the extent the entry of the consent decree was made over the opposition of private plaintiffs, it could be said that private plaintiffs did not completely prevail. (Memorandum dated November 9, 1973.) Nevertheless, envisioning the possibility "that later modifications [would] grant private party plaintiffs the relief they seek", and regarding the significant accomplishments that private plaintiffs had already achieved, we chose to regard the extent to which private plaintiffs prevailed as complete for the purpose of awarding attorney's fees. It is, however, clear from the background in which that ruling was made, that neither the court nor the parties intended that ruling to bind private plaintiffs to an agreement to which they were not party to.

Defendants also make two policy arguments against the further prosecution of the private class actions. They contend that permitting private plaintiffs to proceed would give rise to an improper form of "duplicitous" litigation and would discourage settlements with the government in future Title VII actions.

It is clear that Congress was concerned with the filing of duplicitous suits under Title VII. For this reason, Title VII was amended in 1972 to provide that intervention, rather than the filing of separate lawsuits is the proper procedure where there is a prior Title VII suit on file against the same defendants. 42 U.S.C. § 2000e–5(f)(1) *as amended* by the Equal Opportunity Act of 1972. Thus, several cases, two of which are cited by defendants, have prohibited the EEOC from filing a separate lawsuit where private plaintiffs had already brought suit pursuant to "right to sue" notices from the Commission. *Equal Employment Opportunity Commission v. Missouri Pacific Railroad Co.*, 493 F.2d 71 (8th Cir. 1974); *Equal Employment Opportunity Commission v. Cronin*, 370 F.Supp. 579 (E.D.Mo.1973). However, these cases, and the 1972 amendments which they interpret, do not speak to the effect of settlement by the government on the rights of private plaintiffs to proceed. Indeed, the cases which do consider this question do not even speak of any possible duplicitous litigation. Rather, they seem to uniformly recognize that the interests of private plaintiffs and the government are not identical and, therefore, have allowed private plaintiffs to proceed with their own actions despite the existence of a government settlement.

■ Nevertheless, it is true, as defendants contend, that by allowing private plaintiffs to get relief beyond that provided for in the consent decree, defendants of Title VII actions may be less willing to enter into settlements with the government in the future. But on the other hand, by permitting negotiated settlements by the government to control the relief available to private plaintiffs, private actions may be significantly discouraged. *See Rodriguez v. East Texas Motor Freight*, 505 F.2d at 66. In choosing which Congressional policy to promote, we must rely on the overall purpose of Title VII to eliminate employment discrimination. Thus, while it is true that there is a general preference under Title VII for settlement rather than litigation, where there is a clash between the promotion of settlements and the full enforcement of Title VII rights, in which private actions have played such a significant role, *see Williamson v. Bethlehem Steel Co.*, 468 F.2d at 1204, it is this latter goal which must be promoted. Moreover, it is significant that although the government's ability to settle Title VII suits may be lessened, the government fully supports the right of private plaintiffs to proceed in this litigation. Under these circumstances, it would not be appropriate to allow defendants, over the objections of the government, to claim that dismissal of the private actions is necessary to protect the government's interest in being able to settle cases.

■ Finally, defendants contend that the additional relief sought by private

plaintiffs may conflict with other legislation, including § 703(j) of Title VII, 42 U.S.C. § 2000e–2(j). While the initial view of the court is at odds with that of the defendants on this matter, none of the parties have fully briefed this question. Furthermore, since the court has not decided what relief, if any, should be granted, this question should not be resolved now. But in any case, the mere possibility that the court may be unable to grant all of the relief requested does not destroy the court's jurisdiction to hear private plaintiffs' case. Accordingly, any objections to the relief which the court orders can be raised at the appropriate time and can be resolved after receiving briefs and hearing argument on the issue.

## III. DISCOVERY

■ Defendants have also filed objections to Magistrate Urdan's findings concerning certain discovery matters regarding Rancho Murietta. Defendants' objections to such discovery is primarily based on the ground that plaintiffs have no right to seek discovery in areas outside the court's jurisdiction. For that reason, the court stayed such discovery pending resolution of the jurisdictional question. As the court has now concluded that it does have jurisdiction to hear plaintiffs' motion for injunctive relief regarding the utilization of Rancho Murietta, that stay is hereby vacated. Defendants' other objections to Magistrate Urdan's findings are not meritorious and, therefore, Magistrate Urdan's discovery order of May 20, 1975, is hereby affirmed.

## IV. REFERENCE TO A MASTER

At oral argument, defendants suggested that the hearing regarding Rancho Murietta be conducted by a special master, possibly an expert in labor relations. Subsequently, defendants have proposed in a letter to the court that an impartial expert be appointed to study and report on the apprenticeship training program at the Rancho Murietta Training Center and that his report be reviewed and considered by the court before hearings are held on plaintiffs' motions regarding the utilization of Rancho Murietta. Both the government and private plaintiffs oppose the appointment of a person outside the federal court system to preside over this hearing and suggest that the matter be referred to a federal magistrate.

■ Although under rule 53(b) of the Federal Rules of Civil Procedure, a reference to a master shall be the "exception rather than the rule," to be made only upon a showing of some "exceptional condition," § 706(f)(5) of Title VII, 42 U.S.C. § 2000e–5(f)(5), specifically provides for the appointment of a master in keeping with the policy of expediting Title VII cases whenever practicable. Here, where a hearing could take several weeks, and where on sight visitation would appear necessary, reference to a master seems particularly appropriate. However, in the interest of limiting the expense of such a hearing, and because it would be desirable to have a formal record developed, reference will be made to a United States magistrate rather than a special master. In the event that the magistrate feels that expert testimony is necessary to properly evaluate the program at Rancho Murietta, he may make such recommendation to the court. Accordingly, plaintiffs' motion for injunctive relief concerning utilization of Rancho Murietta, filed May 13, 1975, shall be referred to United States Magistrate David R. Urdan for consideration and disposition.

IT IS SO ORDERED.