Charles H. BRATTON, Guadalupe Galvan, Jr., Jim Haley, John Retamosa, Jr., Cleotha Starks, James E. Toney and Clevron Tucker, Plaintiffs–Appellants,

v.

BETHLEHEM STEEL CORPORATION and Local 1845 United Steel Workers of America, Defendants–Appellees.

No. 77–2133.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 4, 1980.

Decided Sept. 29, 1980.

As Amended Dec. 17, 1980.

Martha Goldin, Hollywood, Cal., for plaintiffs–appellants.

Laurence D. Steinsapir, Los Angeles, Cal., on brief; Rudolph L. Milasich, Jr., Pittsburgh, Pa., Everett F. Meiners and William H. Emer, Los Angeles, Cal., for defendants–appellees.

Before WALLACE and TANG, Circuit Judges, and HANSON,* District Judge.

WALLACE, Circuit Judge:

Seven individual employees, who joined their separate actions alleging racial discrimination in a single complaint before the district court, appeal from the district court's award of summary judgment in favor of defendants Bethlehem Steel Corporation (the Company) and Local 1845 of the United Steelworkers of America (the Union). Each of the plaintiffs alleged violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and of the Civil Rights Act of 1870, 42 U.S.C. § 1981 (1976). The Company and the Union moved for summary judgment on five separate grounds: (1) the plaintiffs' Title VII actions were barred by the applicable California statute of limitations; (2) four of the plaintiffs had not filed timely charges with the EEOC, thus barring their Title VII claims; (3) the applicable California statute of limitations barred the plaintiffs' section 1981 actions; (4) there were no genuine issues of material fact; and (5) plaintiffs' individual actions were barred by a consent decree, to which none of these plaintiffs was a party, entered in a previous EEOC pattern and practice action brought against the major steel organizations (including the Company and the Union). In addition, the Union argued that the doctrine of laches barred the plaintiffs' Title

---

* Honorable William C. Hanson, United States District Judge, Northern and Southern Districts of Iowa, sitting by designation.

VII and section 1981 claims against it. The district court granted summary judgment in favor of the Company and Union on the argued grounds. We affirm in part and reverse and remand in part.

I

Plaintiffs have not brought a class action. Each of the individual claims must be evaluated on its own merits, and must be considered separately against the Company and the Union. It is thus necessary to set forth the facts as alleged in each plaintiff's complaint.

Charles Bratton (Bratton), a black person, has been employed at the Company, primarily as a welder, since 1950, except for a three–year period during 1973–1976 when he worked full–time as president of the Union. He was a member of the Union's bargaining unit at all relevant times. On April 4, 1967, Bratton filed a Title VII charge with the EEOC, alleging that the Company had denied him a promotion to supervisor on account of his race. This charge was settled by conciliation. The conciliation agreement provided that Bratton would release the Company from further liability based on this charge. Bratton claims that he never signed this agreement; the Company urges that Bratton acquiesced in its terms.

On August 4, 1969, Bratton filed a second charge, against both the Company and the Union, alleging that he was not allowed to call fellow on–duty workers to testify in his defense during a disciplinary hearing, although white workers were routinely permitted this privilege. The Company claims, in its affidavits, that Bratton voluntarily refused to call any witnesses. On May 3, 1976, the EEOC issued Bratton a "right to sue" letter, enabling Bratton to institute a private Title VII action concerning both the lack of promotion and the denial of the right to call witnesses. The instant action followed 64 days later, on July 6, 1976.

Bratton alleges in his complaint (1) that the Company has long maintained a system of distinct job classification for its black and Mexican–American employees; (2) that

as part of this discriminatory policy Bratton was denied equal opportunities in regard to promotion, and terms and conditions of work; (3) that in 1976, upon his return to work following his three–year leave for service as Union president, the Company retaliated against him for his active protests against the Company's discriminatory employment practices by denying him a job transfer to a desirable department; and (4) that the Union failed, for racially discriminatory reasons, to represent Bratton adequately in grievance proceedings against the Company. In opposition to summary judgment, Bratton submitted an affidavit which details the facts underlying the allegations in his complaint.

Guadalupe Galvan (Galvan), a Mexican–American, has worked for the Company, primarily as a millwright, since 1967. He has been a member of the Union's bargaining unit during that entire period. On January 28, 1971, Galvan filed an EEOC charge against both the Company and the Union, claiming that the Company discriminatorily denied him a promotion and parity of pay with white workers in his job classification, and that the Union failed to represent him fairly. He received a "right to sue" letter from the EEOC on May 3, 1976. Galvan, like each of the other plaintiffs, joined his complaint to Bratton's and incorporates by reference Bratton's allegations concerning the Company's and the Union's discriminatory actions. In addition, Galvan alleges by affidavit that in October 1975 he was harassed on the job and unequally treated with regard to testing for promotion, for racially discriminatory reasons. He claims that this harassment and unequal treatment continues to the present. He further alleges that the Union has not cooperated in pursuing his grievances.

Clevron Tucker (Tucker), a black person, has worked for the Company since 1951, primarily as a truck driver, and has been at all relevant times a member of the Union's bargaining unit. On December 1, 1971, he filed an EEOC charge against both the Company and the Union alleging that the Company had discriminated against him in

pay, days off, and shift assignments, and that the Union had failed properly to represent him, all on account of his race. He received a "right to sue" letter on May 3, 1976. In his affidavit opposing summary judgment, Tucker alleges that he was passed over for promotion for racially discriminatory reasons on several occasions, as recently as "around 1973." He further alleges that the Company presently discriminates in assigning trucks to its various drivers, and that black truck drivers are assigned broken-down trucks, which results in these drivers receiving lower pay than Mexican-American and white drivers.

James Haley (Haley), a black person, has worked for the Company as an automobile and truck mechanic, and has been a member of the Union's bargaining unit, since 1950. He filed an EEOC charge against the Company on April 12, 1972, claiming that he was discriminated against because of his race in testing, promotion, wages, and work assignments. He received a "right to sue" letter on May 3, 1976. In his affidavit, Haley claims that as recently as December 12, 1976, he was unfairly disciplined because of his race, in that he was written up for lateness to work while tardy whites were given only verbal warnings. He further claims that the Union has refused to help him process his resulting grievances.

Cleotha Starks (Starks), a black person, began working for the Company on March 30, 1973. On November 6, 1973, he filed an EEOC charge against the Company in which he alleged that the Company denied him a job transfer on account of his race. He was issued a "right to sue" letter on May 3, 1976. Starks incorporates by reference Bratton's charges of racial discrimination, but alleges no facts to support a charge of racial discrimination against himself. Starks claims only that he received less favorable work assignments than others with less seniority, and that he was required to resign for falsifying his employment record. He claims that a white employee was not discharged for "allegedly" falsifying employment records, but he does not indicate whether the white worker's "alleged" offense was actually proven. The Company's affidavits offer credible, non-racial reasons for Starks' discharge.

James Toney (Toney), a black person, began working for the Company in 1969 as a time-study technician. He was laid off on January 29, 1971. He has never been a member of the Union bargaining unit. Toney filed a charge with the EEOC on February 3, 1971, alleging that he was harassed on the job by his supervisor, denied a promotion to the accounting department, and laid off. Toney's charge set forth no reasons to suppose that these actions were taken on account of his race. He received a "right to sue" letter from the EEOC on May 3, 1976. Although Toney, like the other plaintiffs, incorporates by reference Bratton's generalized discrimination charges, Toney does not allege facts suggesting that he was subjected to or affected by racial discrimination. He does allege that two whites in his department remained employed when he was laid off during a Company-wide reduction in its labor force, but he does not allege that his layoff was due to his race, nor that the Company's work-force reduction impacted disproportionately on blacks. Moreover, Toney does not contest evidence contained in an affidavit of Lou Goodness, Superintendent of Labor Relations and Personnel Services at the Company plant where Toney worked, that Toney was laid off in accordance with normal, nondiscriminatory practices.

John Retamosa (Retamosa), a Mexican-American, began working for the Company in 1968 as a laborer, and was a member of the Union bargaining unit. Retamosa's charge against the Company, filed April 12, 1974, alleged that he had been unfairly discharged on October 19, 1971. Like Toney, Retamosa failed to allege that the Company's actions toward him were racially motivated. Retamosa was issued a "right to sue" letter on May 3, 1976. Although Retamosa's complaint incorporates by reference Bratton's discrimination charges, Retamosa's affidavit opposing summary judgment does not set forth any facts suggesting racial discrimination.

## II

With the factual background of each plaintiff's claims in mind, we now turn to the district court's rulings. We consider first whether the district court correctly awarded summary judgment to the Company and the Union on plaintiffs' section 1981 claims.

The district judge held that the plaintiffs' section 1981 claims were barred, alternatively, by the three–year statute of limitations contained in Cal.Code Civ.Proc. § 338(1) (West Supp.1979), or by the one–year period contained in Cal.Code Civ.Proc. § 340(3) (West Supp.1979). He further held that the plaintiffs had failed to raise genuine issues of material fact in support of their section 1981 claims.[1] The plaintiffs claim that the applicable California statute of limitations is the three-year provision set forth in section 338(1), and that each plaintiff has raised genuine issues of material fact concerning discriminatory acts occurring within that limitations period.

### A. The Appropriate Statute of Limitations Period

■ In *Johnson v. Railway Express Agency*, 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975), the Supreme Court held that the controlling limitations period for a cause of action under section 1981 "would ordinarily be the most appropriate one provided by state law." The Court also held that where state law does not provide an applicable tolling provision, the selected state limitations period is not tolled by filing a Title VII complaint with the EEOC. *Id.* at 463–66, 95 S.Ct. at 1721–1723. In *Kirk v. Rockwell Int'l Corp.*, 578 F.2d 814, 820 (9th Cir.), *cert. denied*, 439 U.S. 1004, 99 S.Ct. 616, 58 L.Ed.2d 680

(1978), we held that *Johnson* applies retroactively. Accordingly, each of the plaintiffs' claims is governed by the most appropriate California statute of limitations, and, because there is no relevant California tolling provision,[2] *see* Cal.Code Civ.Proc. § 352; *Briley v. California*, 564 F.2d 849, 854–55 & 855 n.6 (9th Cir. 1977), we look in each case to the interval between the alleged acts of discrimination and the commencement of this lawsuit on July 6, 1976.

We must initially identify the "most appropriate" California statute of limitations for section 1981 actions. The district court suggested two possibilities: Cal.Code Civ. Proc. (CCP) § 338(1) (three–year statute of limitations for actions on liability created by statute), and CCP § 340(3) (one–year period for "injury to . . . one caused by the wrongful act or neglect of another"). Two other possibilities are CCP § 337 (four–year statute of limitations for actions founded on contract), and CCP § 343 (a "catch–all" four–year statute for all actions not otherwise provided for).

We have long held that the three–year limitations period of CCP § 338(1) applies to causes of action brought pursuant to 42 U.S.C. § 1983, *see, e. g., Briley v. California*, *supra*, 564 F.2d at 854; *Ney v. California*, 439 F.2d 1285, 1287 (9th Cir. 1971); *Smith v. Cremins*, 308 F.2d 187, 189–90 (9th Cir. 1962), but we have never determined which California statute of limitations governs section 1981 actions. *See Kirk v. Rockwell Int'l Corp.*, *supra*, 578 F.2d at 820 & n.19 (not reaching question of which California limitations provision applies to section 1981 actions); *id.* at 821 n.5 (Hufstedler, J., concurring) (same).[3] We have, however, nar-

---

1. The district court also awarded summary judgment to the Union on the ground that plaintiffs' section 1981 claims were barred by laches. We discuss this issue in Part III–D *infra*.

2. The plaintiffs have not argued that their EEOC filings tolled the statute of limitations on their § 1981 claims. *See Jackson v. Hayakawa*, 605 F.2d 1121, 1127 (9th Cir. 1979), *cert. denied*, 445 U.S. 952, 100 S.Ct. 1601, 63 L.Ed.2d 787 (1980).

3. Several district courts within this circuit have considered the issue of which California statute of limitations governs section 1981 actions. All have concluded that CCP § 338(1) provides the relevant limitations period. *See Wiltshire v. Standard Oil Co. of California*, 447 F.Supp. 756, 764–66 (N.D.Cal.1978) (appeal pending); *Lim v. Citizens Sav. and Loan Ass'n*, 430 F.Supp. 802, 817 (N.D.Cal.1976); *Sias v. City Demonstration Agency*, 18 F.E.P. Cases 978, 979 (C.D. Cal.1976), *aff'd in part and remanded in part on*

rowed the choices to the three–year period of CCP § 338(1), or the four–year period of either CCP § 337 or CCP § 343. *Griffin v. Pacific Maritime Assoc.*, 478 F.2d 1118, 1119 (9th Cir.) (per curiam), *cert. denied*, 414 U.S. 859, 49 S.Ct. 69, 38 L.Ed.2d 109 (1973). Because the section 1981 claim of at least one of the plaintiffs, Tucker, may hinge on events which occurred "around 1973" (between three and four years before Tucker filed this action), we must now choose between the three–year and four–year provisions. We conclude that the three–year limitations period for "liability based on statute," provided by CCP § 338(1), governs these section 1981 actions.

"The state limitations statute that we have repeatedly borrowed [for section 1983 actions] is a statute that prescribes the limitations for actions founded on a liability created by statute." *Shouse v. Pierce County*, 559 F.2d 1142, 1146–47 (9th Cir. 1977). In *Smith v. Cremins, supra*, 308 F.2d 187, we explained why the California statute of limitations for "liability based on statute" is more appropriate for section 1983 actions than any of the state statutes of limitations, such as CCP § 337, that govern common–law causes of action:

> Section 1983 of the Civil Rights Act clearly creates rights and imposes obligations different from any which would exist at common law in the absence of statute. A given state of facts may of course give rise to a cause of action in common–law tort as well as to a cause of action under Section 1983, but the elements of the two are not the same.

*Id.* at 190.

The rationale used in *Cremins* for applying CCP § 338(1) to section 1983 actions applies with equal force to section 1981 actions. The elements of a section 1981 claim of employment discrimination are distinct from those required for either common–law tort or contract actions. For example, a section 1981 plaintiff need not show that his employer assumed a specific contractual duty not to discriminate against him; it is sufficient to demonstrate that prohibited discrimination occurred within the employment relationship. *See Johnson v. Railway Express Agency, supra*, 421 U.S. at 459–60, 95 S.Ct. at 1719–1720; *Wiltshire v. Standard Oil Co. of California*, 447 F.Supp. 756, 765–66 (N.D.Cal.1978) (appeal pending); *Walthall v. Blue Shield of California*, 12 F.E.P. Cases 933, 934 (N.D.Cal. 1976). Section 1981 liability for employment discrimination arises independently of common–law contractual liabilities; it is therefore a separate "liability based on statute."

We have recently applied Arizona's limitations period for "actions founded on a liability based on statute," Ariz.Rev.Stat. § 12–541(3), to a section 1981 action. *Tyler v. Reynolds Metal Co.*, 600 F.2d 232, 234 (9th Cir. 1979) (per curiam). Although we offered no reasons for applying that provision, we cited two section 1983 cases[4] in support of our holding. These citations suggest that section 1983 and section 1981 actions should be treated identically when a state provides a limitations period for "liability based on statute." The language of Ariz.Rev.Stat. § 12–541(3) directly parallels CCP § 338(1). Moreover, California's and Arizona's statute of limitations schemes are virtually indistinguishable, except that California's three–year period for "liability based on statute" is more generous than

*other grounds*, 588 F.2d 692 (9th Cir. 1978); *Walthall v. Blue Shield*, 12 F.E.P. Cases 933, 934 (N.D.Cal.1976); *Pizano v. J. C. Penney Co.*, 12 F.E.P. Cases 1321, 1322 (E.D.Cal.1975); *Dennison v. City of Los Angeles Dep't of Water & Power*, 10 F.E.P. Cases 1486, 1492 (C.D.Cal. 1975).

Courts in other circuits have reached disparate conclusions in applying various state limitations statutes to section 1981 actions. Of course, these decisions are helpful only when viewed in light of a particular state's statutory

limitations scheme; each state offers different choices, both as to type of actions covered and the length of limitations periods. For a listing of suggested appropriate statutes of limitations for a section 1981 action in various states, *see* Federal Regulation of Employment Service, Job Discrimination § 1:25 (1978 & Supp.1980).

4. *Shouse v. Pierce County*, 559 F.2d 1142, 1146–47 (9th Cir. 1977) (per curiam); *Mason v. Schaub*, 564 F.2d 308, 309 (9th Cir. 1977) (per curiam).

Arizona's one–year period. We think that our selection of the Arizona "liability based on statute" provision was sound, and should be followed in California.

Because CCP § 338(1) is an appropriate choice, we need not look to California's "catch–all" provision, CCP § 343, which governs only those actions not otherwise covered in California's statutory scheme. As the appropriate limitations period is three years, we must next determine whether the plaintiffs' section 1981 claims raised genuine issues of material fact concerning the occurrence of unlawful discrimination within three years of the institution of this action.

B. *Genuine Issues of Material Fact*

█ The plaintiffs jointly commenced this action on July 6, 1976. We focus, therefore, on alleged acts of discrimination occurring within three years of that date. Because we are reviewing a summary judgment, we must view all of the evidence and factual inferences in the light most favorable to the plaintiffs. *See Reed v. Lockheed Aircraft Corp.*, 613 F.2d 757, 759 (9th Cir. 1980).

Bratton alleges that when he returned to the Company in 1976 after three years as president of the Union, the Company retaliated against him for his civil rights activism by denying him opportunities for promotion. Bratton specifically claims in his affidavit that he obtained training as a management planner, but was squeezed out of the Company's all–white management planning department for racially discriminatory reasons. Bratton's allegations that the Company intentionally discriminated against him within the three–year limitations period establish a prima facie case of unlawful discrimination under section 1981. *See Craig v. County of Los Angeles*, 626 F.2d 659 (9th Cir. 1980); *Reed v. Lockheed Aircraft Corp., supra*, 613 F.2d at 759–60. Bratton fails, however, to allege any facts constituting unlawful discrimination by the Union during the limitations period; indeed, he was the Union president during that period. Thus, the district court erred in dismissing Bratton's claim against the Union.

Company on limitations grounds, but correctly barred Bratton's section 1981 claim against the Union.

Galvan claims that in the autumn of 1975 the Company denied him promotion on account of his race. He alleges that three white workers with less seniority were promoted ahead of him. Although the Company disputes Galvan's account, he has raised a genuine issue of fact concerning a discriminatory denial of promotion. Such discrimination, if proved, would violate section 1981. *Reed v. Lockheed Aircraft Corp., supra*, 613 F.2d at 759–60. The Union has not contested Galvan's allegations of unfair representation on account of race. The district court thus erred in dismissing Galvan's section 1981 actions against the Company and the Union.

Tucker alleges that in 1975 he was denied promotion and that in 1976 he was removed from a job assignment in favor of a less senior employee. Tucker has not claimed that these actions were race–related. The Company has submitted affidavits offering credible, non–discriminatory reasons for these events. Because the non–racial explanations for these events are uncontested, we do not think these claims, as they presently stand, raise genuine issues of material fact.

Tucker also alleges that "around 1973" he was denied promotion, notwithstanding his seniority, for racially discriminatory reasons. If proven, this act of discrimination would support a prima facie case under section 1981. *Id.* However, Tucker's affidavit does not clearly place this alleged act of discrimination within three years of the date the instant complaint was filed. Thus, Tucker's "around 1973" allegation does not sufficiently allege facts within the period of the statute of limitations.

Finally, Tucker claims that in 1975 and 1976 a Company superintendent discriminated against him and other black drivers by assigning the best trucks to Spanish–surnamed drivers. Specifically, Tucker alleges that he was unable to work because the only working truck would always be assigned to a Spanish–surnamed driver. This

allegation supports a prima facie case that Tucker was denied equal opportunity on the job. *See Long v. Ford Motor Co.*, 496 F.2d 500, 505–06 (6th Cir. 1974). Moreover, the Company does not contest Tucker's allega-tion of this 1975 and 1976 discrimination. Thus, Tucker's allegations concerning trucking assignments raise genuine issues of material fact concerning violations of section 1981.

We conclude that the district court erred in awarding summary judgment to the Company. Because Tucker has not alleged any facts supporting a charge of unfair representation by the Union within the limitations period, however, we conclude that the district court's award of summary judgment in favor of the Union was correct.

Haley complains that in 1975 and 1976 he was "written up" for not being dressed on time and for punching the wrong time clock, whereas white workers were given only verbal warnings (which do not appear on a worker's disciplinary record) for the same infractions. Haley's allegations, if true, would demonstrate denial of equal opportunity at the Company within the limitations period. *Id.* at 505–06. Haley's allegations of unfair representation by the Union also raise genuine issues of material fact, which are not disputed by the Union. Thus, the district court erred in awarding summary judgment to the Company and the Union on Haley's section 1981 claim.

Retamosa and Starks fail to allege any discriminatory acts at any time by either the Union or the Company. The Company's affidavits offer credible, non–discriminatory reasons for the Company's actions toward Retamosa and Starks. The contents of the Company affidavits are uncontested. Thus, the district court correctly found that no genuine issues of fact existed to demonstrate discrimination against Retamosa and Starks in violation of section 1981.

■ Toney alleges that he was fired as a result of race discrimination in 1970 and was never recalled. This violation occurred six years before Toney filed the instant complaint, and is thus out-of-time. Toney urges, however, that the Company's failure to rectify this unfair firing constitutes discrimination continuing to the present, and thus is not time-barred.

We have held that "[a] layoff, by itself, . . . is not . . . a continuing act" cognizable under section 1981. *Griffin v. Pacific Maritime Assoc.*, *supra*, 478 F.2d at 1120. *See Prophet v. Armco Steel, Inc.*, 575 F.2d 579, 580 (5th Cir. 1978) (per curiam). Toney does not allege that the Company's recall policy has been discriminatory. Toney's claim of continuing discrimination therefore fails. Toney has also failed to allege that the Union discriminated against him. The district court thus ruled correctly in awarding summary judgment to the Company and the Union on Toney's section 1981 action.

### III

We next discuss whether the district court correctly awarded summary judgment to the Company and the Union on plaintiffs' Title VII claims.

#### A. *Statute of Limitations*

■ The district court held that the plaintiffs' Title VII claims were barred by the California statute of limitations. In a case decided after the district court's decision, we ruled that "Title VII does not borrow state statutes of limitations . . ." *Kirk v. Rockwell Int'l Corp.*, *supra*, 578 F.2d at 819. The sole limitations period on Title VII claims is embodied in Title VII's own time limits on filing charges and giving notice to employers. *Id.* The district court's ruling on this ground was thus erroneous.

#### B. *Timeliness of Plaintiffs' EEOC Filings*

For all actions "pending" before the EEOC on or after March 24, 1972, Title VII requires that the aggrieved party have filed a discrimination charge with the EEOC within 180 days of the occurrence of the alleged discriminatory act. 42 U.S.C. § 2000e–5(e).[5] We have held that an action

---

5. If the aggrieved party first files his charge with an appropriate state agency, he may file

his EEOC charge within 300 days of the date of the discriminatory act, or within 30 days of

was "pending" with the EEOC as of March 24, 1972, if on that date the aggrieved party's charge was on file with the Commission and the EEOC had not yet taken final action. *Inda v. United Air Lines, Inc.*, 565 F.2d 554, 561 (9th Cir. 1977), *cert. denied*, 435 U.S. 1007, 98 S.Ct. 1877, 56 L.Ed.2d 388 (1978). *See also Electrical Workers Local 790 v. Robbins & Myers, Inc.*, 429 U.S. 229, 241–44, 97 S.Ct. 441, 449–450, 50 L.Ed.2d 427 (1976).

All of the plaintiffs' charges were filed on or after March 24, 1972, and the EEOC did not take final action until May 3, 1976. The 180–day filing requirement therefore applies in each case. All claims except Retamosa's were timely under this standard.

■ Retamosa was terminated on November 8, 1971. He was subsequently reinstated, without back pay, on March 18, 1973. He filed the instant charge, which concerned only his discharge and reinstatement without back pay, on April 12, 1974, more than one year later. His Title VII claim as to both defendants was thus untimely filed and was properly dismissed on this ground.

### C. *Failure to Name Union in EEOC Charges*

■ Pursuant to 42 U.S.C. § 2000e–5(f)(1), a private Title VII action may be brought only "against the respondent named in the charge" previously lodged with the EEOC. *See, e. g., Gibson v. Local 40, Supercargoes and Checkers, ILWU*, 543 F.2d 1259, 1263 n.1 (9th Cir. 1976); *Le Beau v. Libby–Owens–Ford Co.*, 484 F.2d 798, 799 (7th Cir. 1973). Toney, Haley, Starks, and Retamosa all failed to name the Union as a respondent in their EEOC charges. Although we construe EEOC charges with the

"utmost liberality since they are made by those unschooled in the technicalities of formal pleading," *Kaplan v. International Alliance of Theatrical and Stage Employees*, 525 F.2d 1354, 1359 (9th Cir. 1975), these plaintiffs' charges neither named the Union nor alleged facts from which it could be inferred that the Union (either the Local or the International) violated Title VII. Thus, the district court correctly dismissed these plaintiffs' Title VII actions against the Union.

### D. *Laches*

■ The district court held that the plaintiffs' Title VII and section 1981 claims against the Union were barred by the equitable doctrine of laches.[6] In making this determination, the court neither analyzed the reasons for the plaintiffs' delays in seeking judicial enforcement of their separate Title VII and section 1981 actions, nor assessed the prejudice to the defendants occasioned by this delay. Instead, the district court simply defined laches as the bringing of an action after the California statute of limitations had expired,[7] and dismissed the plaintiffs' claims without further analysis.

The defense of laches "requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *Costello v. United States*, 365 U.S. 265, 282, 81 S.Ct. 534, 543, 5 L.Ed.2d 551 (1961); *Cady v. Morton*, 527 F.2d 786, 792 (9th Cir. 1975); *Lathan v. Brinegar*, 506 F.2d 677, 691–92 (9th Cir. 1974) (en banc). *See Bosse v. Crowell, Collier and MacMillan*, 565 F.2d 602, 611 n.15 (9th Cir. 1977); *Shouse v. Pierce County, supra*, 559 F.2d at 1147; *City of Davis v. Coleman*, 521 F.2d 661, 677 (9th Cir. 1975). Laches questions are sel-

---

receiving notice that the state agency has terminated proceedings, whichever is earlier. 42 U.S.C. § 2000e–5(e) (1976). State filing did not occur in this case.

**6.** Only the Union raised laches as a defense. Both prevailing parties submitted proposed findings of fact and conclusions of law, which

the district judge adopted as explanation for his awards of summary judgment, but only the Union's version specified laches as a ground supporting judgment.

**7.** The district court based this purported laches determination on, alternatively, Cal.Code Civ. Proc. § 340(3) (one year) and Cal.Code Civ. Proc. § 338(1) (three years).

dom susceptible of resolution by summary judgment, because "where laches is raised as a defense 'the factual issues involved . . . can rarely be resolved without some preliminary evidentiary inquiry.'" *Sandvik v. Alaska Packers Ass'n*, 609 F.2d 969, 974 (9th Cir. 1979), *quoting Espino v. Ocean Cargo Line, Ltd.*, 382 F.2d 67, 70 (9th Cir. 1967). *But see McCune v. F. Alioto Fish Co.*, 597 F.2d 1244, 1250 (9th Cir. 1979) (when facts are undisputed, an evidentiary hearing is not requisite for a laches determination).

We have held that laches may constitute a defense to a Title VII action when a party's "unexcused or unreasonable delay has prejudiced his adversary." *Boone v. Mechanical Specialties Co.*, 609 F.2d 956, 958 (9th Cir. 1979). In *Boone* we affirmed a summary judgment on laches grounds in favor of the defendant, Mechanical, where Mechanical's unchallenged affidavits indicated that Boone had delayed seven years in seeking a "right to sue" letter from the EEOC, even though the EEOC had repeatedly informed Boone that such a letter could be issued forthwith and that the agency would assist him in bringing a court action. There was also uncontroverted

proof that Mechanical was severely prejudiced by the intervening unavailability, through no fault of its own, of several key witnesses. Mechanical thus made a clear and unanswered showing that Boone's suit was not diligently filed, and that this lack of diligence had significantly prejudiced Mechanical.[8]

In the case before us neither party has submitted affidavits or other proof bearing on the laches issue. There is no evidence that the plaintiffs delayed in requesting "right to sue" letters. All plaintiffs filed suit within 90 days of receiving the "right to sue" letters from the EEOC, satisfying pertinent statutory requirements. *See* 42 U.S.C. § 2000e–5(f)(1) (1976). Nor is there any evidence indicating that the defendants were prejudiced by the long interval between the filings of the EEOC charges and the institution of suit. As there was no factual basis for finding that either of the two necessary elements of laches was satisfied, the district court abused its discretion in precluding the plaintiffs' Title VII claims on that ground.[9]

### E. Genuine Issues of Material Fact

■ We have already considered whether the plaintiffs raised genuine issues of mate-

---

**8.** Our statement in *Boone* that "'[t]he bare fact of delay creates a rebuttable presumption of prejudice,'" 609 F.2d at 958, *quoting International Tel. & Tel. Corp. v. General Tel. and Elec. Corp.*, 518 F.2d 913, 926 (9th Cir. 1975), is thus properly read as dictum. Far from relying in *Boone* on a presumption of prejudice, we carefully examined the evidence of prejudice that Mechanical submitted.

Whatever may be an appropriate use of presumptions in laches cases not involving Title VII, we believe that prejudice should not lightly be presumed from delay in Title VII cases. Generally, some delay in a Title VII case will be attributable to the EEOC's time–consuming, and unfortunately backlogged, efforts at conciliation. *See Occidental Life Ins. Co. v. EEOC*, 432 U.S. 355, 368–72, 97 S.Ct. 2447, 2455–2457, 53 L.Ed.2d 402 (1977); *Kirk v. Rockwell Int'l Corp.*, 578 F.2d 814, 824 (9th Cir.), *cert. denied*, 439 U.S. 1004, 99 S.Ct. 616, 58 L.Ed.2d 680 (1978) (Hufstedler, J., concurring). While a Title VII complainant should not be permitted to prejudice a putative defendant by taking deliberate advantage of EEOC delays before requesting a "right to sue" letter, *see Lynn v. Western Gillette, Inc.*, 564 F.2d 1282, 1287–88 (9th Cir. 1977), neither should it be presumed

that all such delays are the complainant's fault. Similarly, because a defendant must have notice of a pending EEOC action, prejudice is often minimal despite a significant delay before court action is initiated. Although we found prejudice in *Boone* despite Mechanical having such notice, we did so only on a factual record indicating that Mechanical was prejudiced by the death and disappearance of witnesses.

**9.** In view of our finding that the district court based its laches determinations in this case upon an insufficient record, we need not decide whether laches may ever be raised in defense of a section 1981 action. *See Shouse v. Pierce County*, 559 F.2d 1142, 1147 (9th Cir. 1977) (per curiam) (finding insufficient prejudice to support laches in section 1983 action, thus not needing to consider whether the laches defense is available under section 1983). *See also Franks v. Bowman Transp. Co.*, 495 F.2d 398, 406 (5th Cir. 1974) (laches available under section 1981), *rev'd on other grounds*, 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976); *Stewart v. Wappingers Cent. School Dist.*, 437 F.Supp. 250, 255 (S.D.N.Y.1977) (laches not available).

rial fact in support of their section 1981 claims. That discussion applies as well to plaintiffs' Title VII claims, *see Craig v. County of Los Angeles*, 626 U.S. 659 (9th Cir. 1980), with two significant differences. First, since plaintiffs' Title VII actions are not subject to the state statute of limitations, and Title VII's own timing prerequisites, except as found above, have been satisfied, we must consider all the genuine issues of material fact raised by the plaintiffs, not just those concerning discrimination that occurred within three years of filing the complaint. Second, in evaluating the plaintiffs' allegations, we may consider only those which were raised in the EEOC charge, or which "encompass any discrimination like or reasonably related to the allegations of the EEOC charge, including new acts occurring during the pendency of the charge before the EEOC." *Oubichon v. North American Rockwell Corp.*, 482 F.2d 569, 571 (9th Cir. 1973).

Retamosa and Starks, as indicated earlier, failed to raise any genuine issues of material fact against either the Company or the Union. Toney and Haley failed to name the Union in their EEOC charges. We therefore need consider only whether Toney and Haley have raised genuine issues of material fact in support of their Title VII claims against the Company, and whether Bratton, Galvan, and Tucker have raised sufficient issues of fact against both the Company and the Union.

Toney claims that in 1971 he was harassed on the job, denied a promotion, and fired. The Company disputes Toney's version of the story and offers credible, non–racial rationales for its actions. In light of the Company's uncontroverted explanation, Toney's allegations and supporting affidavit fail to demonstrate that any of Toney's difficulties at the Company had to do with his race. Thus, Toney has failed to raise a genuine issue of material fact in support of his Title VII action against the Company.

Haley's 1972 EEOC charge alleged job harassment and denial of promotion, both allegedly on account of his race. If true, the allegations in his complaint and affidavit submitted in opposition to summary judgment would demonstrate these and similar denials of equal job opportunities. We find that Haley's allegations are reasonably related to the substance of his 1972 charge, and thus satisfy the test set forth in *Oubichon*. We conclude that Haley's allegations raise genuine issues of material fact in support of Haley's action against the Company.

Bratton and Galvan each filed EEOC charges alleging discriminatory denials of promotion, and failure of representation by the Union. Each alleged facts supporting such charges in his complaint and accompanying affidavits. Because their complaints and affidavits are reasonably related to the underlying EEOC charges, the *Oubichon* test is met.

For the reasons we expressed in our discussion of their section 1981 claims, both Bratton and Galvan have raised genuine issues of material fact respecting Company discrimination in violation of Title VII.[10] It is uncontested that Galvan has raised genuine issues of material fact against the Union. It thus remains to be determined if Bratton's Title VII action against the Union is substantiated by genuine issues of material fact.

Bratton claims that the Union failed to secure certain witnesses to testify on his behalf during an arbitration hearing in 1969. But Bratton's own testimony at the hearing demonstrates that he elected not to call these witnesses. Furthermore, Bratton has alleged no facts to substantiate his claim that the Union's representation of him during this hearing was affected by racially discriminatory concerns. We therefore find that Bratton has failed to raise a genuine issue of material fact in his Title VII claim against the Union.

---

**10.** Because Bratton's allegations concerning denial of employment opportunities and promotion in 1976 are sufficient to raise genuine issues of material fact, we need not reach the allegations contained in Bratton's 1967 charge, nor consider whether it matters that Bratton never signed the conciliation agreement concerning this charge entered into between the EEOC and the Company.

Tucker claimed in his 1971 EEOC charge that the Company had discriminated against him because of his race in regard to pay, shift assignments, and days off. He further charged that the Union had failed adequately to represent him, because of his race. Tucker's allegations in his complaint and supporting affidavits involve both the substance of his 1971 EEOC charge, and an additional allegation: the discriminatory denial of a promotion "around 1973." We find that the allegations concerning pay, shift assignments, and days off, though time–barred for purposes of his section 1981 action, raise genuine issues of material fact in support of Tucker's Title VII claim against the Company. We therefore need not decide whether Tucker's allegations concerning denial of promotion are sufficiently related to his 1971 charge to be considered in his Title VII action.

Tucker's allegations of unfair representation by the Union, though also concerning events out–of–time for purposes of his section 1981 action, set forth genuine issues of fact in support of his Title VII action. These allegations are uncontested. We therefore find that Tucker has raised genuine issues of material fact in his Title VII action against the Union.

## IV

■ The district court concluded as a matter of law that the consent decrees entered in *United States v. Allegheny–Ludlum Indus., Inc.*, 63 F.R.D. 1 (N.D.Ala.1974), *aff'd* 517 F.2d 826 (5th Cir. 1975), *cert. denied*, 425 U.S. 944, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976), preclude the plaintiffs' claims against the Company. This conclusion was wrong.

The *Allegheny–Ludlum* consent decrees resolved an employment discrimination lawsuit brought by the Secretary of Labor and the EEOC against nine major steel companies, including Bethlehem Steel, and the United Steelworkers of America. In affirming the district judge's approval of the decrees, the Fifth Circuit stated: "As the district court correctly determined, neither decree purports 'to bind any individual em-

ployee or to prevent the institution or maintenance of private litigation.' " *United States v. Allegheny–Ludlum Indus., Inc.*, supra, 517 F.2d at 836, *quoting* 63 F.R.D. at 4. It is clear that no private individual was made a party to the consent decrees. Private parties became bound only by accepting the back pay offered in the decree and executing a release of liability. *Id.* at 837–38. None of these plaintiffs received back pay pursuant to the consent decree or executed such releases. As the plaintiffs were neither parties to the *Allegheny–Ludlum* litigation nor in privity with the governmental agencies who were parties, they clearly are not bound by the terms of the consent decree. *See Williamson v. Bethlehem Steel Corp.*, 468 F.2d 1201, 1203 (2d Cir. 1972), *cert. denied*, 411 U.S. 931, 93 S.Ct. 1893, 36 L.Ed.2d 390 (1973); *EEOC v. Local Union No. 3, Int'l Union of Operating Eng'rs*, 416 F.Supp. 728, 732–34 (N.D.Cal. 1975). To hold otherwise would, for all practical purposes, foreclose a private right of action whenever the EEOC has already concluded enforcement activities. This would frustrate Congress' " 'intent to accord parallel or overlapping remedies against discrimination' " in order to accommodate the occasionally divergent public and private interests. *General Tel. Co. v. EEOC*, 446 U.S. 318, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980), *quoting Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974).

## V

We have held that the district court correctly awarded summary judgment in favor of the Union in the following actions: Bratton (both Title VII and section 1981); Starks (same); Retamosa (same); Toney (same); Tucker (section 1981 claim only); and Haley (Title VII claim only). The district court erred in granting summary judgment in favor of the Union against Galvan (both Title VII and section 1981 claims), Tucker (Title VII claim), and on Haley's section 1981 claim.

The district court correctly entered summary judgment in favor of the Company in

the following actions: Starks (both Title VII and section 1981); Retamosa (same); and Toney (same). The court erroneously awarded summary judgment to the Company against Bratton (both Title VII and section 1981 claims), Galvan (same), Haley (same), and Tucker (same).

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.